**In re RIDGELINE STRUCTURES, INC., Debtor.**

**Bankruptcy No. 93–10282.**

United States Bankruptcy Court,
D. New Hampshire.

May 14, 1993.

Daniel Sklar, Peabody & Brown, PA, Manchester, NH, for FDIC as Rec'r of Family Bank & Trust.

Elaine M. Beauchesne, Sanders and McDermott, Hampton, NH, for Saxonville Wholesale Lumber Warehouse Co.

Thomas W. Morse, Hall, Morse, Anderson, Bauer & Miller, Concord, NH, for Gillies & Prittie, Inc.

Geraldine B. Karonis, Assistant U.S. Trustee, Manchester, NH.

Raymond J. DiLucci, Concord, NH, for Ridgeline Structures, Inc.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The Court had before it on April 13, 1993 a motion for use of cash collateral which was filed on April 5, 1993 by the debtor and set for hearing on April 13, 1993. An unsecured creditor in this case objected on the basis that the shortened notice period did not comply with Fed.R.Bankr.P. 4001(b)(2) and I believed their point was well taken. Accordingly, the Court by bench ruling and a separate Order entered after the hearing denied the motion on the terms put forward by the debtor and secured creditor but did authorize interim cash collateral usage on terms specified in the Order.[1]

■ In fact, what the Court was called upon to approve on April 13th was not the terms set forth in the motion, but rather a stipulation between the debtor and the Federal Deposit Insurance Corporation ("FDIC") that was reached and filed in open Court at the outset of the hearing. That by itself requires an objection period of 15 days and a five day hearing notice to an objector under Rule 4001(d) before an order approving a stipulation between a debtor and a secured creditor can be entered. This is the minimum protection the

Court can afford other creditors which have an interest in the property and/or its distribution who are not party to the stipulation for cash collateral usage. *See In re Prairie Truck*, 112 B.R. 924, 928 (Bankr. N.D.Il.1990).

■ In addition, the FDIC, in the proposed stipulation and order, provided for itself that no expense of administration will be charged against the secured party under § 506(c) no matter what action, inaction, or acquiescence by FDIC might occur. That is against public policy and unenforceable per se. This Court is not authorized to and never would insulate any party from the consequences of their conduct no matter how egregious.[2]

■ Finally, the order submitted by the debtor and the FDIC does not include the "winding down" proviso that this Court requires in cash collateral orders. Administrative Order No. 35. That paragraph, which is known to counsel who practice in this Court, states as follows:

The provisions of this order are subject to a "winding down" proviso under which the Court reserves the right to enter such further orders as may be necessary regarding the use of cash collateral to provide for payment of any administrative claims for wage and trade creditors who have supplied goods or services to the debtor during the period of operation under this order [and any stipulation] which remain unpaid at the time of termination of authorized cash collateral usage, and which goods or services have created additional collateral for the secured claimant.

The winding down proviso is, in a sense, this Court's incorporation by administrative order of the "equities of the case" provision of 11 U.S.C. § 552(b) and, in my judgment, is just a matter of elementary fair-

---

1. This Memorandum Opinion formalizes and amplifies the bench ruling made at the conclusion of the April 13, 1993 hearing.

2. I am aware of the decision in *In re Film Equipment Rental Co.*, 1991 WL 274464, 1991 U.S.Dist. LEXIS 17956 (S.D.N.Y.1991), in which a similar clause in a cash collateral order was

enforced. However, in that case there was no assertion of any egregious conduct which would render enforcement unconscionable nor had the bankruptcy court in the order on appeal made *any* findings as to why he felt justified in not enforcing the clause.

ness when an entity is operating under Court orders and people assume that if they supply goods and services they will have an administrative claim that will not simply be wiped out by the unilateral action of another party. *See In re Crouch*, 51 B.R. 331, 332 (Bankr.D.Or.1985) ("The purpose behind the 'equities of the case' rule of 11 U.S.C. § 552(b) is, in a proper case, to enable those who contribute to the production of the proceeds during chapter 11 to share jointly with pre-petition creditors secured by proceeds").

The FDIC's attorney indicated that the FDIC does not agree. It is the FDIC's position that the proviso is not fair to them because they are allowing the use of their cash collateral and there has to be some period of time for that usage and conditions upon its continued authorization. They argue that if they terminate it they shouldn't be put in a worse position then they were at the outset. That point logically makes some sense but the fact of the matter is that the FDIC can monitor the operation and act to prevent further usage as may be appropriate to prevent any great exposure and injury not only to themselves but also other innocent parties.[3]

In this case, as in many cases, the Court has directed the debtor to file weekly reports on inventory usage, which is the primary cash collateral being used, so that the FDIC can see if the thing is going out of whack and call it to a halt before a lot of new trade creditors are induced to come into this enterprise and end up being unpaid. The secured creditor is in a better position than the new trade creditors to make sure that doesn't happen.[4]

It is not the function of a chapter 11 proceeding to exacerbate the situation by creating new unpaid creditors over those that existed at the outset of the case. To say that trade suppliers that are supplying during the chapter 11 should go on a C.O.D. basis is another way of saying that the debtor should have some additional problems to overcome apart from everything else.

For all these reasons the debtor is authorized on a preliminary basis to use cash collateral for a 30–day period until this Court can have a further hearing on a new motion, with a minimum of 15 days notice, giving the terms and conditions of a permanent order. The debtor will be authorized to use up to $10,000 a week of cash collateral provided that it files promptly weekly reports of the usage and of new inventory coming in, i.e., inventory going out on sales, inventory coming in on new purchases, and their changing cash position, so that the FDIC can in fact monitor what is going on. The report should be filed the Tuesday following each week with a copy sent directly to counsel for the FDIC.

The continued hearing will be on a motion day and if there still is a dispute as to the amount of the secured debt, I will take offers of proof only at that time. I will make a provisional allowance, or disallowance, to get a reference number for further cash collateral usage protection. I will leave it open to the FDIC to file an appropriate adversary proceeding to determine the actual amounts involved if the parties can not stipulate.

The FDIC has requested an adequate protection payment in addition to the foregoing provisions during this 30 day period. The FDIC points out that the debtor has not made a payment on the loan in question for a year and a half. On the other hand, the record indicates that even though the business operation has been

---

**3.** Neither the FDIC, nor any other secured creditor as far as I know, has ever appealed the "winding down" proviso in this District. If the FDIC feels strongly about it of course they could take an appeal and get it resolved. For the time being, however, and until there is a contrary ruling on an appeal, I believe that the winding down proviso is essential for elementary fairness in these interim situations at the outset of the case until the Court and the parties have a

better view of the nature of the operation and the viability of the reorganization.

**4.** Otherwise a secured creditor could let the debtor-in-possession operation "build up the collateral" to a high point at the expense of administrative creditors and then "pull the plug" and leave them unpaid. As between such parties the secured creditor is in the better position to prevent the problem from occurring.

generating in excess of $1 million in sales, the debtor's principals have drawn no salaries out of this enterprise for a year and a half and do not intend to draw any during this 30–day period. On balance, I do not believe that any adequate protection payment is necessary for that period. I could authorize them to draw some salary which probably would approximate the amount requested.

During the 30–day period under the order entered separately the FDIC will have a replacement lien on the same types of collateral that it had pre-bankruptcy and the order will be subject to the winding down proviso quoted above.