Dan H. HOXWORTH, named: Dan Hoxworth; Louise A. Hoxworth, named: Louise Hoxworth, individually and on behalf of the Hoxworth Class, Plaintiffs/Counter–Defendants/Appellees,

v.

Lillian BLINDER; Lillian Blinder Trust, the, Defendants/Cross–Claimants/Appellants,

and

Meyer Blinder; Donald L. Walford; Walford Demaret & Company, Inc.; Bradford Bolton, Clerk, United States Bankruptcy Court for the District of Colorado, Defendants.

Dan H. HOXWORTH, named: Dan Hoxworth; Louise A. Hoxworth, named: Louise Hoxworth, individually and on behalf of the Hoxworth Class, Plaintiffs/Counter–Defendants/Appellees,

v.

Meyer BLINDER, Defendant–Appellant,

and

Donald L. Walford; Walford Demaret & Company, Inc.; Bradford Bolton, Clerk, United States Bankruptcy Court for the District of Colorado, Defendants,

Lillian Blinder; Lillian Blinder Trust, the, Defendants/Cross–Claimants.

Nos. 94–1474, 94–1508.

United States Court of Appeals, Tenth Circuit.

Jan. 22, 1996.

Rehearing Denied Feb. 27, 1996.

John M. Richilano (John A. Berman, with him on the briefs), Denver, Colorado, for Appellants Lillian Blinder and The Lillian Blinder Trust.

Ellen Meriwether (Jeffrey M. Villanueva and Randolph Dement, Bader & Villanueva, P.C., Denver, Colorado, with her on the briefs), Miller Faucher Chertow Cafferty and Wexler, Philadelphia, Pennsylvania, for Appellees Dan and Louise Hoxworth.

John Fogerty Winston, Englewood, Colorado, for Appellant Meyer Blinder.

Before MOORE, BRORBY, and KELLY, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Defendants Meyer Blinder and Lillian Blinder appeal a decision of the district court, asking us to decide whether a judgment creditor may assert an equitable lien against assets excluded from a bankruptcy estate pursuant to a settlement agreement when the creditor was also an unsecured creditor of the estate and in privity with the trustee by virtue of the unsecured claim. We conclude the creditor is neither in privity with the trustee nor otherwise barred by the settlement agreement from asserting its secured lien. Consequently, we affirm the district court.

The Blinders appeal from a district court order granting plaintiffs, Dan and Louise Hoxworth, individually and on behalf of a class of investors (the Hoxworth Class), an equitable lien over assets now held in the Lillian Blinder Trust and traceable to funds defrauded from the Hoxworth Class by Meyer Blinder. *Hoxworth v. Blinder*, 170 B.R. 438, 444 (D.Colo.1994). There are two issues pertinent to our resolution of this matter: first, whether the Hoxworth Class was in privity with the bankruptcy trustee of the Blinder, Robinson & Co. estate and, therefore, barred by *res judicata* from asserting an equitable lien over assets excluded from the bankruptcy estate pursuant to a settlement agreement between the trustee and the Blinders; and, second, whether the Hoxworth Class' equitable lien was waived or extinguished when the class settled its unsecured claim with the trustee without asserting its lien against the estate.

I.

Meyer Blinder was the "penny stock" king

of Colorado.[1] As president of Blinder, Robinson & Co., a Colorado-based securities firm, Mr. Blinder amassed a fortune of $24 million and, with his wife, Lillian Blinder, controlled a securities empire including 85 branch offices and 1800 brokers. Mr. Blinder's empire began to collapse when Dan and Louise Hoxworth filed a class action suit in the United States District Court for the District of Pennsylvania on behalf of a group of investors, claiming Mr. Blinder overcharged and defrauded the purchasers and sellers of certain securities in violation of federal and state securities laws, RICO, and common law fiduciary duty. A summary of the class action is found in *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912 (3d Cir.1992).

The Hoxworth Class obtained a default judgment in the Pennsylvania federal district court against Meyer Blinder for over $70 million. More importantly, the court imposed a constructive trust and an equitable lien on all assets in which Meyer Blinder held an interest, as well as a constructive trust and equitable lien on all assets, by whomever held, that can be traced to the funds defrauded from the Hoxworth Class. The district court judgment was affirmed in all respects by the Third Circuit. *Id.* at 927.

The present action arose when the Hoxworth Class attempted to assert its equitable lien over assets controlled by the Lillian Blinder Trust and traceable to the Blinder's fraudulent activities. The Hoxworth Class' tracing method is not in dispute. *Hoxworth,* 170 B.R. at 443. Instead, the Blinders challenge the Hoxworth Class' authority to exercise the lien in light of Blinder Robinson's liquidation and the settlement agreement that arose out of that bankruptcy proceeding.

Proceedings for liquidation of Blinder Robinson were commenced in the United States Bankruptcy Court for the District of Colorado while the Pennsylvania class action against Meyer Blinder was still pending. Based upon its transactions with Blinder Robinson, the Hoxworth Class filed an unsecured proof of claim against the Blinder Robinson estate. Assertedly, this claim was separate from the Pennsylvania claim against Meyer Blinder.

The bankruptcy trustee, representing all creditors of the estate, entered into a settlement agreement with the Blinders (the Blinder Settlement). The agreement required the Blinders to transfer all their assets into the Blinder Robinson estate with the exception of certain assets then valued at approximately $1.8 million (the Excluded Assets). The Excluded Assets were to be held in the Lillian Blinder trust and are the subject of this appeal. The Hoxworth Class, as creditors of the estate, appealed the bankruptcy court's approval of the Blinder Settlement because the terms were not in the best interest of the estate and its creditors.

To move ahead with the Blinder Settlement, the trustee negotiated a settlement agreement with the Hoxworth Class (the Hoxworth Settlement), which disposed of all claims between the class and the Blinder Robinson estate. The Hoxworth Class agreed to dismiss its appeal of the Blinder Settlement and to modify an injunction the Pennsylvania court had placed over Meyer Blinder's assets to allow the trustee to proceed with the Blinder Settlement. In return, the trustee allowed the Hoxworth Class to assert a $30 million unsecured proof of claim against the Blinder Robinson estate. The various adversarial proceedings and injunctions leading up to the trustee's settlement agreements with the Blinders and with the Hoxworth Class are detailed in the district court opinion. *Hoxworth,* 170 B.R. at 439–41.

This case was submitted to the district court for decision upon a stipulated evidentiary record. Consequently, we review the district court ruling *de novo. FDIC v. Kansas Bankers Sur. Co.,* 963 F.2d 289, 292 (10th Cir.1992).

## II.

The Blinders' first argument relies on the doctrine of *res judicata.* They claim the trustee, in his negotiations with the Blinders,

---

1. "Penny stocks" are low-priced, high risk equity securities. The securities are frequently traded outside well-established trading markets.

represented all creditors to the Blinder Robinson estate, including the Hoxworth Class. Relying on *In re Medomak Canning*, 922 F.2d 895 (1st Cir.1990), the Blinders argue the trustee and the Hoxworth Class were in privity because the two shared identical interests. They assert that while the Hoxworth Class could have enforced its equitable lien in the bankruptcy proceeding, it failed to do so. Thus, the Blinder Settlement, negotiated by the trustee as a representative to the Hoxworth Class, is *res judicata* as to any claim the class may have over the Excluded Assets.

 "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980) (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). The doctrine is intended to relieve parties of burdensome multiple lawsuits, prevent inconsistent decisions, and encourage reliance on adjudication. *Id.* To prevail on a defense of *res judicata* requires a defendant to establish: (1) a final judgment on the merits in the prior action, (2) the claims raised in the subsequent action were identical to those decided in the prior action, and (3) the prior action involved the same parties or their privies. *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1467 (10th Cir.1993).

 Generally, court-approved settlements receive the same *res judicata* effect as litigated judgments. *Medomak*, 922 F.2d at 900; *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 476 (Fed.Cir.1991). Thus, the bankruptcy court-approved settlement between the trustee and the Blinders serves as a prior final judgment. Additionally, the Blinder Settlement and the present action involve an identical claim—rights to the $1.8 million in Excluded Assets. However, we cannot conclude the third element of *res judicata* is met because the Hoxworth Class was not in privity of interest with the trustee.

Although the Hoxworth Class was a creditor of the estate and in privity with the trustee regarding its unsecured proof of claim, the class was also a judgment creditor of Meyer Blinder. The district court properly concluded "the plaintiffs' asserted interest in the excluded assets is not based on their status as creditors of the Blinder Robinson estate, but rather on their status as judgment creditors of Meyer Blinder." *Hoxworth*, 170 B.R. at 442. As a judgment creditor, the class was an adversary to the trustee.

According to the Restatement (Second) of Judgments, "[a] person is not bound by a judgment for or against a party who purports to represent him if ... [w]ith respect to the representative of a class, there was such a substantial divergence of interest between him and the members of the class ... that he could not fairly represent them with respect to the matters as to which the judgment is subsequently invoked. ..." Restatement (Second) of Judgments § 42(1)(d) (1980). As a judgment creditor of Meyer Blinder, the Hoxworth Class was in direct opposition with the trustee. Every dollar of Meyer Blinder's assets the Hoxworth Class reached by imposition of its secured lien would leave one dollar less in the Blinder Robinson estate for the trustee to satisfy creditors. Until the Hoxworth Settlement was reached, the trustee and the Hoxworth Class were in a standoff—each party enjoined from enforcing their respective judgments over the Blinder assets. The parties polar objectives lead us to conclude the trustee represented the Hoxworth Class only as creditors to the Blinder Robinson estate. No privity of interest extended from the trustee to the Hoxworth Class as judgment creditors of Meyer Blinder.

The Blinder's reliance on *Medomak* is misplaced. In *Medomak*, the bankruptcy trustee entered into a settlement agreement with senior mortgagees, giving certain mortgages secured status in return for cash payments and the subordination of the mortgagees' remaining claims to all other allowed unsecured claims. Two unsecured junior lienholders attempted to circumvent the settlement and sought equitable subordination of the mortgagees' secured claims. The First Circuit concluded the junior creditors were in privity with the trustee, who had acted on behalf of all the creditors of the estate, and

were bound by the bankruptcy court's approval of the settlement. Unlike the trustee to the Blinder Robinson estate, however, who could not properly represent the Hoxworth Class regarding its secured judgment against Meyer Blinder, the trustee in *Medomak* was the proper party to represent the unsecured creditors interests. *Medomak*, 922 F.2d at 902. Also, in *Medomak*, the equitable lien was against the bankruptcy debtor's estate. Here, the equitable lien is directed toward Mr. Blinder, individually. His assets were traced into the bankruptcy court registry. Finally, in *Medomak*, the trustee specifically surrendered all equitable subordination claims against the mortgagees in the court-approved compromise. In contrast, the Blinder Settlement is silent regarding the Hoxworth Class equitable lien and does not surrender those claims as part of the agreement. In short, *Medomak* provides no succor for the Blinder's *res judicata* claim.

### III.

■ The Blinders also argue the Hoxworth Class waived the right to assert its equitable lien over the Excluded Assets when the class dismissed its appeal of the Blinder Settlement and settled all claims with the trustee without ever asserting its lien against the property of the estate. The Blinders claim a bankruptcy court order which transferred Blinder assets into the bankruptcy court registry limited the Hoxworth class to asserting its lien against the estate exclusively.

Prior to the Blinder settlement, the trustee initiated an adversary action in the bankruptcy court against the Blinders seeking a declaration that the Blinders operated Blinder Robinson as their alter ego and that all their assets were the property of the Blinder Robinson estate. The bankruptcy court granted a default judgment to that effect and ordered the Blinders to transfer to the trustee all their individual and joint property. The Blinders now contend the bankruptcy court's alter ego ruling universally and automatically transformed ownership of Meyer Blinder's assets into those of the bankruptcy estate. They argue, after this transfer, the Hoxworth Class was obligated to make its elec-

tion in the bankruptcy court or forever forfeit the right to assert its equitable lien. The Blinders rely on this Court's holding in *DeLaney v. City & County of Denver*, 185 F.2d 246 (10th Cir.1950), to claim the Hoxworth class chose to prove its claim as unsecured and, therefore, must "surrender [its] security." *Id.* at 251.

■ Section 506(a) of the Bankruptcy Code states that allowed claims may be secured to the extent of the creditor's interest in the estate's interest in the property, and unsecured to the extent that the value of the creditor's interest is less than the amount of the allowed claim. 11 U.S.C. § 506(a) (1988). Thus, a creditor can have both a secured and unsecured claim arising out of the same transaction. Further, section 501(a) of the code provides equity security holders with the option to file a proof of interest. The provision indicates the subsection is permissive only, and does not require filing a proof of claim or a proof of interest by any creditor. 11 U.S.C. § 501(a) (1988). Therefore, the code allows the Hoxworth Class to make an unsecured proof of claim against the estate, and not assert its secured lien against assets traced into the estate.

The Blinders contend the bankruptcy court's alter ego judgment extinguished the Hoxworth Class' equitable lien. However, the district court properly concluded the alter ego judgment merely transferred legal title of the Blinder assets to the trustee. *Hoxworth*, 170 B.R. at 442–43. Under 11 U.S.C. § 541(d):

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Even if the Excluded Assets were transferred to the trustee, equitable title to those assets never became part of the estate. *See In re Mahan & Rowsey, Inc.*, 817 F.2d 682, 684. (10th Cir.1987). The equitable lien would have attached to the transferred as-

sets just as a consensual lien to property survives a transfer of ownership. .

More importantly, however, we conclude the assets sought by the Hoxworth Class were never included in the bankruptcy estate. Although the Excluded Assets were deposited with the bankruptcy registry as security for a stay of execution, the terms of the Blinder Settlement specifically excluded those assets from the bankruptcy estate. The court-approved settlement provided that the Lillian Blinder Trust "shall retain all assets specifically identified [as the Excluded Assets] ... and the L.B. Trust shall transfer to the Trustee all of its right, title, and interest in all other assets in which the L.B. Trust has or claims any interest." (Joint App. at 184–85). The trustee essentially abandoned the Excluded Assets to the Lillian Blinder trust. Consequently, the bankruptcy court declined to assert jurisdiction over the assets and to decide the relative rights, claims, and interests of competing claimants to property which, in its view, appeared not to be part of the debtor's estate.

■ Unless the collateral is in the possession of the bankruptcy court or the trustee, the secured creditor does not have to file a claim. *Matter of Tarnow,* 749 F.2d 464, 465 (7th Cir.1984). The Blinders' use of *DeLaney,* therefore, is inappropriate. Unlike *DeLaney,* the Hoxworth Class is asserting its lien against a non-debtor over assets outside the bankruptcy estate. The settlement between the Hoxworth Class and the trustee only prevented the class from asserting its lien against the estate. It did not require the class to surrender its lien against assets outside the estate as long as those assets were traced to funds defrauded from the class.

**AFFIRMED.**