In re INTELIQUEST MEDIA CORPO-
RATION, doing business as IMC, do-
ing business as KIQN, doing business
as KIQ AM 1010, doing business as
DrMiser, doing business as Inteli-
Quest, Debtor.

In re InteliQuest Learning Systems, do-
ing business as ILS, doing business
as InteliQuest, Debtor.

InteliQuest Media Corporation, Wood-
bury & Kesler, InteliQuest Learning
Systems, and Cohne Rappaport & Se-
gal, Appellants,

v.

Gil A. Miller, Trustee and Zions First
National Bank, Appellees.

BAP No. UT–04–059.
Bankruptcy Nos. 02C–28588, 02C–31304.

United States Bankruptcy Appellate Panel
for the Tenth Circuit.

June 6, 2005.

Russell S. Walker (David R. Williams and P. Corper James with him on the brief) of Woodbury & Kesler, P.C., Salt Lake City, Utah (Julie A. Bryan of Cohne Rappaport & Segal, Salt Lake City, Utah, with him on the brief) for Appellants.

Weston L. Harris of Parsons Kinghorn Harris, Salt Lake City, Utah, for Appellee Gil A. Miller.

Gary E. Jubber of Fabian & Clendin, Salt Lake City, Utah, for Appellee Zions First National Bank.

Before CORNISH, NUGENT, and BROWN, Bankruptcy Judges.

## OPINION

NUGENT, Bankruptcy Judge.

Appellants appeal from an order of the United States Bankruptcy Court for the District of Utah enforcing two waivers of the right to seek attorney's fees and other expenses as surcharges against a secured party's collateral under 11 U.S.C. § 506(c). The Bankruptcy Court concluded that the waivers, contained in previously-entered financing orders, were res judicata, and therefore binding. We affirm.

## I. Background

Debtors InteliQuest Media Corporation ("IMC") and InteliQuest Learning Systems ("ILS") (collectively, the "Debtors" or "Appellants") filed a "joint" Chapter 11 Petition on May 24, 2002. By a minute order entered on July 10, 2002, the Debtors' cases were bifurcated.[1] The bankruptcy court granted a motion to jointly administer the cases on September 18, 2002. Each Debtor has been represented by separate counsel throughout the proceedings.

On September 12, 2002, as debtors-in-possession, Debtors entered into a postpetition financing stipulation with appellee Zions First National Bank ("Zions") and another lender, American Investment Financial ("AIF")[2] which provided:

---

**1.** See Docket Sheet at 22, deemed included in Appellant's Appendix ("App.") by order dated October 7, 2004.

**2.** AIF is not a party to this appeal.

As further adequate protection of Secured Parties [Zions and AIF], and in consideration of Secured Parties' agreement to Emergency and Post–Petition Financing and Debtors' inclusion in the Budget of such amounts as Debtors deem necessary to preserve the collateral of Secured Parties, *Debtors hereby waive any and all claims which might now or hereafter exist against Secured Parties pursuant to Section 506(c) of the [Bankruptcy] Code.*[3]

On September 18, 2002, the bankruptcy court entered a preliminary order approving the Stipulation,[4] and thereafter, on November 8, 2002, entered a final order approving same[5] (collectively, the "2002 Orders"). Appellants did not appeal either of the 2002 Orders.

On February 18, 2003, the bankruptcy court appointed Gil A. Miller Chapter 11 Trustee ("Trustee") in both cases, displacing the debtors in possession.

On December 3, 2003, the Trustee and Zions ("Appellees") entered into and filed a stipulation concerning surcharging Zions'

collateral for the Trustee's expenses incurred in its disposition.[6] In this stipulation, the parties agreed that the Trustee could seek further surcharges. The Trustee then filed a series of motions to sell assets and to recover administrative expenses incurred in the sale.[7] On December 18, 2003, the cases were converted to Chapter 7. After conversion, Appellants and their counsel objected to the Trustee's application for administrative expenses and for surcharge on the basis that Appellants' counsel had yet to be compensated for their expenses that could also be surcharged under § 506(c) and that, until all such administrative expense applications had been received, the bankruptcy court was precluded from allowing the Trustee's applications.[8] By minute order dated January 8, 2004, the bankruptcy court granted Debtors' counsel an additional 15 days to file their applications for administrative expenses.[9] On January 13, 2004, the bankruptcy court entered an order approving the December 3, 2003 stipulation and confirming the administrative bar date for Debtors' professionals (the "First § 506(c)

---

**3.** Stipulation Authorizing Debtor–In–Possession Financing and Granting Adequate Protection at 6, in Appellees' Supplemental Appendix ("Supp.App.") at S0041 (emphasis added). 11 U.S.C. § 506(c) provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

**4.** *See* Order Approving Emergency Financing and Granting Adequate Protection at 3, in Supp.App. at S0030.

**5.** *See* Final Order Approving a stipulation Relating to Interim Financing Pursuant to Section 364(d) and Granting Priority Liens at 3, in App. at 0042.

**6.** *See* Stipulation for Recovery of Costs and Expenses Pursuant to 11 U.S.C. § 506(c), in App. at 0055.

**7.** Motion for Order Approving Stipulation for Recovery of Costs and Expenses Pursuant to 11 U.S.C. § 506(c) and Notice of Hearing Thereon, in App. at 0061; Omnibus (1) Motion to Allow and Approve Payment of Certain Administrative Expenses and (2) Objection to Allowance and Payment of Certain Other Asserted Administrative Expenses Combined with Notice of Hearing Thereon, in Supp.App. at S0159.

**8.** *See* Objection to Trustee's Motion to Allow and Approve Payment of Certain Administrative Expenses and *Response to Objection for* Allowance and Payment of Certain Other Asserted Administrative Expenses, in App. at 0067.

**9.** *See* Docket Sheet at 7, deemed included in App. by order dated October 7, 2004.

Order").[10]   By January 27, 2004, both debtors' counsel had filed their applications.   With respect to § 506(c) surcharge, the First § 506(c) Order stated:

> The payment of such administrative expenses pursuant to 11 U.S.C. § 506(c) is without prejudice to the Trustee seeking to charge Zions First National Bank pursuant to 11 U.S.C. § 506(c) from remaining cash collateral of Zions National Bank [sic] presently held by the Trustee or directly to the extent remaining cash collateral may be inadequate.[11]

On January 26, 2004, the Trustee and Zions filed another motion to approve a further stipulation between themselves in which they agreed:

> The obligation of Zions set forth herein shall be in full and complete satisfaction of any and all Section 506(c) claims or charges that the Trustee, any successor trustee, or the estates of these Debtors shall have against Zions or its collateral.[12]

Debtors' professionals objected to this motion.[13]   Debtors' objections again centered on their having incurred expenses that would qualify as surcharges under 11 U.S.C. § 506(c).   After a hearing at which counsel for the Debtors, the Trustee, and Zions appeared, the bankruptcy court granted the Trustee's motion and approved the January 26, 2004 stipulation. After a February, 2004 hearing (at which time the bankruptcy court also approved fee applications previously filed by Debtors' counsel) the court approved Appellees' second § 506(c) Motion.

In its order of March 9, 2004 ("the Second § 506(c) Order"), the bankruptcy court approved the application for expenses set forth in the January 26, 2004 stipulation with a slight modification:

> The obligation of Zions set forth herein shall be in full and complete satisfaction of any and all Section 506(c) claims or charges that the Trustee, his professionals or any successor trustee shall have against Zions or its collateral.[14]

Debtors appealed neither the First nor the Second § 506(c) Order.

On March 1, 2004, before the entry of the Second § 506(c) Order, both Debtors' counsel filed a joint motion to surcharge the remaining Zions cash collateral for their outstanding fees and expenses.   This motion drew an objection from Zions, but was apparently never pursued.[15]   In May of 2004, Debtors filed a motion to compel the Trustee "to prosecute a claim pursuant to 11 U.S.C. § 506(c) for an order allowing

---

**10.**   *See* Order with Respect to A) Motion for Order Approving Stipulation for Recovery of Costs and Expenses Pursuant to 11 U.S.C. § 506(c) and B) Omnibus (1) Motion to Allow and Approve Payment of Certain Administrative Expenses and (2) Objection to Allowance and Payment of Certain Other Asserted Administrative Expenses, in App. at 0253.

**11.**   *Id.* at 0255.

**12.**   Motion for Order Approving Stipulation for Recovery of Costs and Expenses Pursuant to 11 U.S.C. § 506(c) and Notice of Hearing Thereon at 7, in App. at 0282.

**13.**   *See* Objection to Trustee's Motion for Order Approving Stipulation for Recovery of Costs and Expenses and to Allow and Ap-

prove Payment of Certain Administrative Expenses, in App. at 0289.

**14.**   *See* Order Granting Motion for Order Approving Stipulation for Recovery of Costs and Expenses Pursuant to 11 U.S.C. § 506(c) at 3, in App. at 0373.   We note the bankruptcy court's removal of a reference to "the estate," *see* First § 506(c) Order, *supra.*

**15.**   Supreme Court authority makes it clear that only a trustee has standing to pursue a surcharge.   *See Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

attorney[']s fees and costs of debtors ... to be assessed against [Zions'] collateral ...." [16] Both Appellees objected. [17] On June 17, 2004, after hearing argument from the parties, the bankruptcy court denied the Motion to Compel in its entirety.

On July 2, 2004, the bankruptcy court entered an order denying Debtors' Motion to Compel "as such relief is inconsistent with the [2002 Orders and the Second § 506(c) Order] ... all of which orders are final orders and are res judicata in this case" from which Debtors timely appealed. [18]

## II.  Jurisdiction

■■■ This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal. [19] Neither party elected to have this appeal heard by the United States District Court for the District of Utah; thus each has consented to our review. A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " [20] In the present case, the order denying the Motion to Compel resolved all outstanding issues raised by Debtors' counsel. The matter is thus ripe for review.

## III.  Standard of Review

■■■ As the facts are not in dispute, we review the bankruptcy court's legal conclusions *de novo*. [21] When exercising *de novo* review, we are unconstrained by the trial court's conclusions, and may affirm the trial court on any legal ground supported by the record. [22]

## IV.  Discussion

Appellants challenge the bankruptcy court's refusal to compel the Trustee to seek a surcharge of Zions' collateral to pay their outstanding attorney's fees and expenses. They question the bankruptcy court's reliance upon res judicata. They also assert that relying on a previously-approved waiver of § 506(c) surcharges to deny their motion violates public policy. Finally, they assert that their expenses are entitled to be treated pro-rata with the trustee's surcharges. While several courts have considered the effect of § 506(c) waivers in financing orders, there are no reported decisions by courts in this Circuit.

---

16. *See* Motion to Compel Trustee to Pursue Claim Pursuant to 11 U.S.C. § 506(c) and to Distribute Proceeds of Claim, in App. at 396–97.

17. *See* Objection of Zions First National Bank to Motion to Compel Trustee to Pursue Claim Pursuant to 11 U.S.C. § 506(c) and to Distribute Proceeds of Claim, and Trustee's Response to Motion to Compel Trustee to Pursue Claim Pursuant to 11 U.S.C. § 506(c) and to Distribute Proceeds of Claim, in App. at 396, 425.

18. *See* Order Denying Motion to Compel Trustee to Pursue Claim Pursuant to 11 U.S.C. § 506(c) and to Distribute Proceeds of Claim, in App. at 0473.

19. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

20. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712,· 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

21. *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir.1997) (citing *May v. Parker–Abbott Transfer & Storage, Inc.*, 899 F.2d 1007, 1009 (10th Cir.1990)).

22. *See Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir.1997).

In entering its order, the bankruptcy court relied exclusively on res judicata to deny not only the Appellants' motion to compel, but also their demand to be treated pro-rata with the trustee. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[23] Court-approved settlements receive the same res judicata effect as litigated judgments.[24] The elements of res judicata are 1) a final judgment on the merits in a prior action; 2) that the claims raised in the subsequent action are identical to those decided in the prior action; and 3) that the prior action involved the same parties or privies.[25] This doctrine is intended to relieve parties of burdensome multiple lawsuits, to prevent inconsistent decisions, and to encourage reliance on adjudication.[26]

Appellants' heavy reliance on *In re Hen House Interstate, Inc.*[27] is misplaced. In that case (*Hen House I*), a panel of the Eighth Circuit held that in a converted Chapter 11 case, an insurer of the debtor had standing to seek a § 506(c) surcharge of a secured creditor's collateral to recover unpaid post-petition premiums. Notwithstanding the presence of a § 506(c) waiver in a previously-entered financing order, the panel construed the lender's assent to the debtor's use of cash collateral as an implicit agreement to the insurer's surcharge and allowed the insurer to seek its surcharge. This opinion doubtless supports the Appellants' position, but it was vacated by the Eighth Circuit and resubmitted to that court *en banc* on the issue of whether the insurer had standing to seek the surcharge.[28] In *Hen House II*[29], the Eighth Circuit concluded that only the trustee has standing to pursue a surcharge. This view was ultimately affirmed by the Supreme Court in *Hartford Underwriters Insurance Co. v. Union Planters Bank.*[30] *Hen House I* is therefore of no persuasive value in the case before us.

Only a few courts have dealt with the enforceability of a post-petition § 506(c) waiver. One court has declined to approve such a waiver in the first instance.[31] One District Court has, without

---

**23.** *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)).

**24.** *Bezanson v. Bayside Enterprises, Inc. (In re Medomak Canning)*, 922 F.2d 895 (1st Cir. 1990), *cited with approval in Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir.1996).

**25.** *Hoxworth*, 74 F.3d at 208.

**26.** *Id.*

**27.** 150 F.3d 868 (8th Cir.1998).

**28.** *Id.* at 873.

**29.** 177 F.3d 719 (8th Cir.1999).

**30.** 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

**31.** *See In re Ridgeline Structures, Inc.*, 154 B.R. 831, 832 (Bankr.D.N.H.1993), where the bankruptcy court found that a stipulation purporting to waive § 506(c) expenses "no matter what action, inaction, or acquiescence by [the secured party] might occur" (and which also failed to provide other creditors with the requisite objection period), was against public policy and unenforceable per se. The court warned that "[it] is not authorized to and never would insulate any party from the consequences of their conduct no matter how egregious." The *Ridgeline* court distinguished the matter before it from the case of *In re Film Equipment Rental Co.*, 1991 WL 274464, 1991 U.S. Dist. LEXIS 17956 (S.D.N.Y.1991), wherein a similar waiver was enforced, noting that in that prior case, there was no assertion of any egregious conduct which would render enforcement unconscionable. *Id.* n. 2. There is no suggestion of "egregious conduct" here.

addressing res judicata, found such a waiver to be unenforceable as interfering with the congressional mandate that the trustee have the authority to use a portion of a creditor's collateral to preserve or dispose of that collateral.[32]

We consider that the better view of this issue is articulated in *In re Molten Metal Technology, Inc.*,[33] where the bankruptcy court held that a waiver approved by the court and embodied in an order is enforceable under principles of res judicata. There, as here, the court approved such a waiver and made it a final order. *Molten Metal* states:

> The issue is whether the order is now enforceable. On this the Lender correctly states the law: where the waiver is approved by and expressly embodied in an order of the Bankruptcy Court, then, by the principle of res judicata, it is enforceable—at least against the Debtors in Possession, the Trustee, and those served with the motions to approve the agreements containing the waivers—regardless of how it squares with public policy, with the Bankruptcy Code, and with the interests of the estate.[34]

Appellants do not argue that any of the § 506(c) Orders entered in this case are not final. They never appealed either of the validly entered 2002 Orders or the First and Second § 506(c) Orders. Both the estate and Trustee previously agreed that Zions' collateral would not be vulnerable to any surcharges other than those described in the orders. In hearings in

which the Appellants actively participated, the bankruptcy court approved those agreements. The issues raised by Appellants in the Motion to Compel are identical to those raised in their Objections to each of the § 506(c) Stipulations between the Trustee and Zions. No appeal from either of the § 506(c) Orders was ever taken and indeed, the parties to each motion are identical. All three elements of res judicata are therefore present.

Furthermore, for the Trustee to have disregarded these binding Orders to seek § 506(c) treatment of the Appellants' attorney's fees would not only breach the letter of the Orders but would also constitute a significant breach of faith with Zions. These kinds of agreements are among the building blocks upon which successful estate administration is based. If trustees were allowed to disregard these terms at the behest of debtors' professionals, what secured creditor would consider making either post-petition financing or cash collateral concessions to a debtor or a trustee? Holding otherwise would seriously undercut future efforts of debtors in possession or trustees to secure these concessions and hinder their ability to efficiently administer estate assets.

There are other avenues by which Appellants could have protected their attorney's fees; the collection of a prepetition retainer and securing a carve-out of the creditor's collateral being two commonly used methods.

■ As to Appellants' claim that § 506(c) requires a pro rata sharing of

---

**32.** *McAlpine v. Comerica Bank–Detroit (In re Brown Brothers, Inc.)*, 136 B.R. 470, 474 (W.D.Mich.1991); *contra In re Molten Metal Tech., Inc.*, 244 B.R. 515 (Bankr.D.Mass. 2000).

**33.** 244 B.R. at 515.

**34.** *Id.* at 525. We note that the *Molten Metal* court cites with approval *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), where a prior court order pertaining to subject-matter jurisdiction was accorded preclusive effect within that case, vis-a-vis those parties, due to the compelling nature of the policies underpinning the res judicata doctrine.

estate assets among claimants, the bankruptcy court held that this claim was also barred by the res judicata effect of the First and Second § 506(c) Orders. No § 506(c) claims have been properly asserted on Appellants' behalf. We note that surcharges and administrative expenses under the Bankruptcy Code are distinct charges against estate property that serve very different purposes. Prorating one with another makes no conceptual sense and violates the Code's priority structure. Compensation for professionals is an administrative expense as defined in 11 U.S.C. § 503 and is an assessment against the estate as a whole because all of the creditors are benefitted. On the other hand, a surcharge under 11 U.S.C. § 506(c) is not an administrative expense. It is an assessment against a secured party's collateral as reimbursement for a particular benefit to such a secured creditor. As set forth in *In re Debbie Reynolds Hotel & Casino, Inc.:* [35]

> [Unlike administrative expenses, a § 506(c) surcharge] does not come out of the debtor's estate, but rather comes directly from the secured party's recovery. Consequently, § 506(c) expenses do not fall within the priority scheme of the Bankruptcy Code at all. These expenses "are paid first out of the proceeds of the sale, before a secured creditor is paid." [36]

## V. Conclusion

The bankruptcy court properly denied the Motion to Compel on the basis of res judicata. We AFFIRM.

**35.** 255 F.3d 1061 (9th Cir.2001).

**36.** *Id.* at 1067 (quoting *United States v. Federal Deposit Ins. Corp.,* 899 F.Supp. 50, 55 (D.R.I.1995)).