EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| La Comisión de los Puertos de Mayagüez<br><br>          Peticionaria<br><br>              v.<br><br>José González Freyre, su esposa Fulana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Frank Haacke, su esposa Sutana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Sarimila Méndez, su esposo Fulano de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Alberto Fernández González, su esposa Mengana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Eduardo Fernández González, su esposa Perenseja de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Trofima Corporation; Inversiones Potosí, Inc.<br><br>          Recurridos | Certiorari<br><br>2023 TSPR 28<br><br>211 DPR ___ |

Número del Caso: CC-2021-249

Fecha: 15 de marzo de 2023

Tribunal de Apelaciones:

     Panel IV

Abogados de la parte peticionaria:

     Lcda. Alicia I. Lavergne Ramírez
     Lcdo. Gustavo J. Vivani Meléndez


Abogado de la parte recurrida:

     Lcdo. Carlos J. Sagardía Abreu


Materia: Procedimiento Civil – Inaplicabilidad de la doctrina de cosa juzgada federal al amparo de los criterios esbozados en Taylor v. Sturgell, 553 U.S. 880 (2008), ante la ausencia de identidad de partes o *privity* en un procedimiento adversativo entre el Síndico de Quiebras y un acreedor.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| La Comisión de los Puertos de Mayagüez<br><br>Peticionaria<br><br>v.<br><br>José González Freyre, su esposa Fulana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Frank Haacke, su esposa Sutana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Sarimila Méndez, su esposo Fulano de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Alberto Fernández González, su esposa Mengana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Eduardo Fernández González, su esposa Perenseja de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Trofima Corporation; Inversiones Potosí, Inc.<br><br>Recurridos | CC-2021-249 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico a 15 de marzo de 2023.

En esta oportunidad debemos evaluar si el Tribunal de Apelaciones erró al desestimar una causa de acción al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, fundamentado en la presencia de cosa juzgada, ausencia de legitimación activa y de parte indispensable.

Como cuestión de umbral se nos presenta lo siguiente: Un Síndico de quiebra de una corporación privada presentó

-en representación del caudal- un procedimiento adversativo contra un acreedor que, además, era presidente y accionista de la empresa quebrada. Con la objeción de una corporación pública acreedora, el Tribunal de Quiebras aprobó una estipulación entre el Síndico y el acreedor demandado en el pleito adversativo.

Ante este escenario, nos corresponde determinar si, de acuerdo con Taylor v. Sturgell, 553 U.S. 880 (2008), a la corporación pública le aplica la doctrina de *res judicata* porque entre esta y el Síndico existe identidad de partes por nexo jurídico o mutualidad de intereses (*privity*) al amparo de la doctrina de *nonparty preclusion*. Una vez resuelto ese asunto, podremos solucionar si la corporación pública puede o no demandar al aludido acreedor y al resto de los directores, oficiales y accionistas de la corporación quebrada y a dos compañías en la que varios de estos figuran en la directiva.

Por los fundamentos que expondremos a continuación resolvemos que, ante la ausencia de *privity* no procede la aplicación de la doctrina de *res judicata* federal a la corporación pública en el pleito de epígrafe. Por lo tanto, la corporación pública tiene legitimación activa para demandar a todos los directores, oficiales y accionistas de la corporación quebrada y contra las aludidas compañías. Consecuentemente, a raíz de que los intereses de la empresa quebrada no se afectan ni están en riesgo, el Síndico no

tiene que comparecer en representación de la compañía ni esta es parte indispensable.

I

## A. Litigio previo a la petición de quiebra: *Injunction* / Desahucio Civil Núm. ISCI2013-00800

El 11 de mayo de 2007, la Comisión de los Puertos de Mayagüez suscribió un *Lease and Development Agreement* (contrato) con Holland Group Port Investment (Holland) para que esta última operara, administrara y desarrollara los Puertos de Mayagüez.[1]

A tenor con los términos del contrato, Holland tenía que mantener un capital mínimo de $4,000,000 y, para cumplir con esto, la Junta de Directores de Holland autorizó la emisión de 800 acciones preferidas que se venderían en $4,000,000 mediante un documento intitulado *Consentimiento Unánime.* El Sr. José González Freyre (señor González Freyre), presidente y accionista de Holland, compró las acciones preferidas y las aportó al capital de la corporación.

Sin embargo, entre 2010 y 2013, Holland incumplió con la presentación oportuna de los informes periódicos sobre su gestión administrativa requeridos por el contrato y dejó de

---

[1] La Comisión de los Puertos de Mayagüez (Comisión) es una corporación pública y política creada al amparo de la Ley Núm. 10 de 8 de mayo de 1959, 25 LPRA sec. 551 *et seq.*, conocida como la Ley de la Comisión de los Puertos de Mayagüez. La Comisión entró en funciones con arreglo a esta legislación mediante la Resolución Núm. 81 de 15 de mayo de 2002, Serie 2001-2002, aprobada por la Legislatura Municipal del Municipio de Mayagüez, según enmendada y la Orden Ejecutiva 2003-77 del 18 de diciembre de 2002. Art. 2 de la Ley de la Comisión, 25 LPRA sec. 553. Entre las facultades de la Comisión se encuentra la capacidad de demandar y ser demandada y "hacer contratos y formalizar todos los instrumentos que fueren necesarios o convenientes en el ejercicio de cualquiera de sus poderes". Art. 4(e) y (f) de la Ley de la Comisión, 25 LPRA sec. 555(e) y (f).

pagar los cánones de arrendamiento correspondientes. En junio de 2013 Holland presentó una *Demanda* de *injunction* contra la Comisión y esta reconvino y solicitó el desahucio.

Durante el litigio, específicamente, el **6 y 7 de mayo de 2014** y sin que la Comisión tuviera conocimiento, los directores y accionistas de Holland autorizaron la redención de las 800 acciones preferidas adquiridas por el señor González Freyre por $4,000,000.[2] De ese dinero, $3,000,000 se transfirieron a Inversiones Potosí, Inc. (Inversiones Potosí) y $1,000,000 a Trofima Corporation (Trofima). El 20 de mayo de 2014 el Tribunal de Primera Instancia dictó *Sentencia* en la que concedió la reconvención presentada por la Comisión, ordenó el desahucio de Holland y el pago de la renta adeudada ($167,658), más las penalidades pactadas al 5% ($8,382.94) y honorarios de abogado ($15,000), para un total de $191,041.75.

---

[2] Para mejor compresión, el Prof. Carlos E. Díaz Olivo, explica lo siguiente:

> El derecho de rescate o **redención es una facultad que se reserva la corporación** o que se le reconoce al accionista, **para que la corporación adquiera** la acción o **las acciones** que este posee **mediante el pago de una suma preacordada.** Nótese que la corporación puede, en cualquier momento ir a donde cualquier de sus accionistas y ofrecerle comprar sus acciones.[citando el Art. 5.14 de la Ley de Corporaciones de 2009, infra]. **El accionista que recibe la oferta**, dentro de su prerrogativa como titular de la acción y amparado en su derecho a la libre transferencia de intereses, **decidirá si acepta o no la oferta**. C.E. Díaz Olivo, *Corporaciones: Tratado sobre derecho corporativo*, 2da ed. rev., Colombia, Ed. AlmaForte, 2022, pág. 321. (Énfasis suplido).

### B. Trámite ante el Tribunal de Quiebras: <u>In re Holland Group Port Investment (Mayagüez), Inc</u>., Caso Núm. 15-08986(BKT)

Luego de dictada la *Sentencia* y de varios trámites procesales,[3] el **12 de noviembre de 2015**, Holland presentó una solicitud de quiebra para la liquidación de la corporación al amparo del Capítulo 7 del Código de Quiebras, 11 USC sec. 701 *et seq*.

Como parte del proceso de quiebra, la Comisión presentó el reclamo (*Proof of claim*) de la acreencia de la *Sentencia* sobre el desahucio.[4] Según expuso la Comisión, avisó al Síndico que los directores de Holland redimieron 800 acciones preferidas por $4,000,000 y esto provocó la insolvencia de capital de la corporación. Igualmente, notificó que el señor González Freyre recibió y transfirió los $4,000,000 a sus empresas, Inversiones Potosí y Trofima.

A raíz de lo anterior, el 20 de octubre de 2016 el Síndico inició un procedimiento adversativo contra el señor

---

[3] De acuerdo con las alegaciones en la *Demanda* de epígrafe, luego de dictada la *Sentencia* por desahucio hubo varias incidencias procesales, entre las cuales estuvo la presentación de un recurso de *certiorari* ante el Tribunal de Apelaciones, la remoción del caso al Tribunal Federal para el Distrito de Puerto Rico y la devolución de este al Tribunal de Primera Instancia quien señaló una audiencia para mostrar causa el **18 de noviembre de 2015**. Según afirmó la Comisión, la vista para mostrar causa no se celebró porque el foro de instancia paralizó los procedimientos a raíz de la petición de quiebras que presentó Holland el 12 de noviembre de 2015.

[4] Surge del expediente que originalmente la Comisión presentó un reclamo (*Proof of claim*) de poco más de $5,000,000. Sin embargo, posteriormente lo enmendó y redujo el reclamo a $1,752,000.98 y esta se divide en las partidas siguientes: $191,041.75 por la *Sentencia* del caso de desahucio; $1,301,866.00 en penalidades impuestas a Holland en virtud del contrato por incumplir en presentar oportunamente, con defecto, de manera incompleta o no presentar los informes; $3,475 en gastos que incurrió la Comisión para la creación de un Plan de seguridad para las facilidades del Puerto de Mayagüez; y $255,618.23 en gastos por reparación y mantenimiento de las facilidades del Puerto de Mayagüez. Petición de *certiorari*, Apéndice, pág. 424.

González Freyre.[5] En la demanda, el Síndico reclamó cuatro causas de acción, a saber: (1) la cancelación de transferencia fraudulenta al amparo de la sec. 548 del Código de Quiebras, 11 USC sec. 548; (2) la recisión de transferencia preferencial perpetrada en fraude de acreedores a tenor con la sec. 544 del Código de Quiebras, 11 USC sec. 544 (b) y el Art. 1243(3) del Código Civil, 31 LPRA sec. 3492(3); (3) devolución de propiedad (*turnover*) conforme a la sec. 542 del Código de Quiebras, 11 USC sec. 542; y (4) un decreto de subordinación en equidad (*equitable subordination*) por el reclamo (*Proof of claim*) del señor González Freyre de $2,024,787.95.[6]

El Síndico alegó que el señor González Freyre, luego de ejecutar la redención de las 800 acciones preferidas de Holland, transfirió los $4,000,000 y los distribuyó entre Inversiones Potosí y Trofima. Expuso que, al momento de la transacción, el señor González Freyre era el presidente, accionista y miembro de la Junta de Directores de Holland, por lo que lo demandó como *insider* de la empresa quebrada, según lo define la sec. 101(31)(b) del Código de Quiebras, a saber: como director, oficial y/o persona en control de Holland.[7] Según afirmó, el señor González Freyre participó

---

[5] Holland Group Port Investment (Mayagüez), Inc, Represented by Roberto Román Valentín, Chapter 7 Trustee v. José González Freyre, Adv. Proc. No. 16-00227 (BKT).

[6] Debemos aclarar que el Sr. José González Freyre presentó dos reclamos (*Proof of claim*s) para un total de $2,024,787.95, a saber: $1,724,787.95 por concepto de dividendos impagados devengados de los $4,000,000 y el otro de $300,000 por servicios profesionales impagados rendidos a Holland.

[7] 11 USC sec. 101(31)(b).

en un esquema fraudulento para descapitalizar la corporación al reducir el patrimonio de Holland y que este admitió que la transferencia se ejecutó sin contraprestación alguna con la corporación y en ausencia de transacción legal.

De este modo, el Síndico solicitó la recisión de la transferencia y la devolución del dinero para beneficio del caudal y los acreedores. A su vez, el Síndico requirió un decreto de subordinación en equidad (*Equitable subordination*)[8] toda vez que el señor González Freyre, como *insider* y accionista, se posicionó como acreedor de Holland, perjudicando al resto de los acreedores.

Aproximadamente once meses más tarde, el señor González Freyre y el Síndico llegaron a un acuerdo transaccional mediante el cual el señor González Freyre -sin admitir su responsabilidad- pagaría al caudal $60,000 y además retiraría el reclamo de $2,024,787.95 que presentó contra Holland.

Las partes pactaron la liberación de las reclamaciones mutuas y, una vez el señor González Freyre emitiera el pago, el Síndico estipuló el desistimiento voluntario con

---

[8] Stoumbos v. Kilimnik, 988 F.2d 949, 958 (1993) ("'Equitable subordination requires that: (1) the claimant who is to be subordinated has engaged in inequitable conduct; (2) the misconduct results in injury to competing claimants or an unfair advantage to the claimant to be subordinated; and (3) subordination is not inconsistent with bankruptcy law.' […] *Defense Comm. v. Silva (In re Christian Life Center),* 821 F.2d 1370, 1376 (9th Cir. 1987) ('The bankruptcy court may subordinate a claim if it finds the claimant engaged in fraud, unfairness or inequity and the claimant's conduct harmed the debtor or its other creditors.') When the trustee seeks to subordinate the claim of a creditor the trustee must present evidence of the creditor's unfair conduct. If the trustee meets this burden, 'the claimant then must prove the fairness of his transactions with the debtor or his claim will be subordinated'.") (Citas omitidas).

perjuicio. La estipulación advirtió que tendría efecto de *res judicata* sobre cualquier conversión o desestimación del caso adversativo y sobre cualquier petición de quiebra futura de Holland.[9]

La Comisión objetó la cantidad y los términos del acuerdo e intentó persuadir sin éxito al Síndico para que prosiguiera con el litigio porque la redención de las acciones eran rescindibles, la transacción resultó fraudulenta o, por la misma razón, debía solicitar la desestimación de la quiebra. Planteó que el Síndico debía presentar contra o incorporar en la causa de acción al resto de los directores que aprobaron la redención de las acciones y así solicitó al Tribunal de Quiebras que no aprobara la estipulación presentada.[10]

Por su parte, el Síndico replicó la objeción de la Comisión[11] y argumentó que, de no aprobarse la estipulación, Holland tendría una causa de acción contingente que incide sobre la certeza de la culminación del proceso de quiebra. A su vez, expresó que los términos y la suma acordada en la estipulación proveen un beneficio tangible para el caudal. En ese sentido, añadió que el reclamo (*Proof of claim*) de la Comisión no debería permitirse. Afirmó que la demora y el costo de la litigación de todos los asuntos exceden la suma

---

[9] Petición de *certiorari*, Apéndice, pág. 238.

[10] Petición de *certiorari*, Apéndice, págs. 250-265.

[11] Destacamos que además de la Comisión otro acreedor se opuso a la estipulación alcanzada. Petición de *certiorari*, Apéndice, págs. 266-276.

que el señor González Freyre suministró como condición para llegar a un acuerdo y enfatizó que mantener la causa de acción podría prolongar sustancialmente el litigio y agotarían los escasos recursos del caudal de Holland. Por lo señalado, argumentó que los términos y condiciones de la estipulación eran justas y equitativas y en el mejor interés del patrimonio de la corporación.[12]

Luego de atender las objeciones de la Comisión, el Tribunal de Quiebras aprobó la estipulación y, mediante orden de 13 de diciembre de 2018, desestimó con perjuicio el procedimiento adversativo.

## C. Demanda estatal luego de que el Tribunal de Quiebras aprobara la estipulación: Caso Núm. BY2019CV01985

Ante este cuadro, el 17 de abril de 2019, la Comisión presentó ante el Tribunal de Primera Instancia una *Demanda* sobre fraude de acreedores, acción rescisoria contra adquirientes de mala fe al amparo de los Arts. 1243(3) y 1250 del Código Civil de Puerto Rico, 31 LPRA secs. 3492(3) y 3499, ante.;[13] nulidad de reducción de capital, responsabilidad de los directores de la corporación por la reducción intencional o negligente de capital, acción contra los directores de la corporación por sentencia insatisfecha

---

[12] Del expediente surge que hubo un intercambio de mociones adicionales entre el Síndico y la Comisión con relación a la aprobación de la estipulación.

[13] Como es de conocimiento, el Código Civil de Puerto Rico de 1930 se derogó mediante la Ley Núm. 55-2020, conocida como el Código Civil de Puerto Rico de 2020. De acuerdo con las disposiciones transitorias que establece la reciente legislación y debido a que los hechos surgieron durante la vigencia del Código Civil de Puerto Rico de 1930, este es el ordenamiento jurídico aplicable a la controversia de autos.

en violación a los Arts. 5.14, 8.04(b), 12.04(b)[14] y 5.22 de la Ley Núm. 64-2009, conocida como Ley de Corporaciones de 2009, 14 LPRA secs. 3501 *et seq*. (Ley de Corporaciones); devolución de fondos distribuidos a los accionistas por la compra de acciones preferidas; responsabilidad por daños y perjuicios contractuales por incumplimiento de las obligaciones de Holland de acuerdo con el contrato contra el señor González Freyre y los demás oficiales, directores y accionistas de Holland, los señores Frank Haacke, Alberto Fernández González, Eduardo Fernández González y la Sra. Sarimila Méndez y sus respectivos cónyuges y sociedades legales de bienes gananciales así como las corporaciones Inversiones Potosí y Trofima (recurridos o demandados).[15]

En resumen, la Comisión alegó que los directores de Holland autorizaron la redención de las acciones para provocar la insolvencia de Holland de modo que la corporación no pudiera satisfacer sus deudas ni la Comisión pudiera cobrar su acreencia. Según aseguró, este acto resultó en contravención a los Arts. 5.14 y 8.04 de la Ley de Corporaciones, *supra*, de manera que conforme al Art. 5.22 de la Ley de Corporaciones, *supra*, los directores y accionistas de Holland son directa y solidariamente responsables ante la Comisión.

En cuanto a Inversiones Potosí y Trofima, la Comisión aseguró que las empresas son adquirentes de mala fe de las

---

[14] 14 LPRA secs. 3594 y 3684(b), 3784(b) y 3602.

[15] Petición de *certiorari*, Apéndice, págs. 85-97.

transferencias recibidas, por lo que reclamó los daños y perjuicios ocasionados por la referida adquisición.

Por otro lado, exigió que, de acuerdo con el Art. 12.04 de la Ley de Corporaciones, *supra*, los directores y accionistas respondan de la *Sentencia* de desahucio insatisfecha, menos la cantidad que finalmente distribuya el Síndico de Holland.

Por último, reclamó a los directores, oficiales y accionistas $259,093.23 por los daños contractuales sufridos porque, según alegó, estos incumplieron con las obligaciones del contrato y la Comisión se vio forzada a contratar a otros para ejecutar las labores correspondientes en los Puertos de Mayagüez.

Los recurridos solicitaron la desestimación de la *Demanda* y argumentaron que la controversia respecto a la redención de las acciones preferidas se litigó y se adjudicó en la demanda adversativa que presentó el Síndico en representación del caudal de Holland ante el Tribunal de Quiebras. Acorde con los demandados, las reclamaciones del Síndico estaban intrínsecamente relacionadas al proceso de liquidación atendido por el Tribunal de Quiebras y que las alegaciones que el Síndico formuló eran similares a las esbozadas por la Comisión en la presente causa de acción. Además, a juicio de los recurridos, la Comisión tuvo la oportunidad de litigar al objetar por escrito, participar de las argumentaciones orales ante el Tribunal de Quiebras y, a

través de esta *Demanda*, pretende relitigar lo adjudicado en dicho foro.

Por otra parte, los demandados expusieron que en la vista sobre la aprobación de la estipulación, el Tribunal de Quiebras atendió las objeciones de la Comisión y la invitó a considerar la oferta del Síndico para adquirir la causa de acción del pleito adversativo o, en la alternativa, financiar el litigio. Sin embargo, la Comisión declinó el ofrecimiento. De manera que, una vez el Tribunal de Quiebras aprobó la estipulación, se consumó el efecto de cosa juzgada. Los recurridos concluyeron que cualquier reclamación dirigida a la impugnación de la redención de las acciones preferidas que realizó Holland constituyó cosa juzgada en la modalidad de impedimento colateral por sentencia.

A su vez, los recurridos plantearon que el Síndico de Quiebra era la única persona autorizada para intervenir o entablar acciones judiciales en beneficio del caudal de Holland. Por lo que, como en la *Demanda* se solicitó la restitución del desembolso pecuniario para beneficio del patrimonio de la empresa, la Comisión carece de legitimación activa para incoar la presente causa de acción. Por último, y cónsono con lo señalado, los recurridos adujeron que Holland era una parte indispensable porque la devolución de los fondos desembolsados por la corporación ante la redención de las acciones preferidas es un remedio que tendría un efecto directo sobre el caudal de Holland y, a raíz de eso, los derechos de la empresa se verían afectados.

La Comisión se opuso y arguyó que no existió identidad de partes ni de causa de acción en el pleito del Síndico ni participó en el litigio contra el señor González Freyre. La Comisión sostuvo que las partes en ese trámite eran el Síndico en representación de Holland y el señor González Freyre que resultó demandado por la transferencia ilegal de los $4,000,000 a Inversiones Potosí y a Trofima.

Así, reiteró que la presente causa de acción al amparo del Art. 5.22 de la Ley de Corporaciones, *supra*,[16] se dirige contra todos los directores de Holland que aprobaron la redención de las acciones en violación al Art. 5.14 de la Ley de Corporaciones, *supra*,[17] en cuanto a que la empresa no

---

[16] El Art. 5.22(a) de la Ley Núm. 64-2009, conocida como Ley de Corporaciones de 2009, 14 LPRA secs. 3501 *et seq*. (Ley de Corporaciones) reconoce una causa de acción contra los oficiales y directores de una corporación sobre la redención de acciones al establecer:

> (a) Cuando intencionalmente o por negligencia se violaren [los Arts. 5.14 y 5.18] secs. 3594 y 3598 de este título, los directores bajo cuya administración se cometiere la violación serán, dentro de los seis (6) años siguientes al pago del dividendo ilegal, solidariamente responsables a la corporación y a los acreedores de la corporación en caso de la disolución o insolvencia, por la cuantía total del dividendo ilegalmente pagado o por la suma pagada ilegalmente en la compra o la redención de las acciones de la corporación, más los intereses que tal cuantía acumulare desde el surgimiento de la responsabilidad. Todo director ausente cuando la misma fue incurrida o que hubiera disentido del acto o de la resolución mediante la cual se incurrió en tal responsabilidad, podrá ser exonerado de responsabilidad, si hace constar en las minutas correspondientes de las sesiones de los directores en las cuales tal acto se realizó su oposición en el momento que ocurrió o inmediatamente después.

[17] En específico y pertinente, el Art. 5.14 de la Ley de Corporaciones, *supra*, promulga que ninguna corporación podrá:

> (1) Usar sus fondos o bienes con el objeto de adquirir sus propias acciones de capital corporativo, cuando el capital de la corporación se haya menoscabado o dicho uso resulte en el menoscabo del capital corporativo; excepto, que la corporación podrá adquirir o redimir con su propio capital sus propias acciones preferidas o especiales o si no hay acciones preferidas o especiales en circulación, cualquiera de sus propias acciones, si dichas acciones se

podía adquirir sus propias acciones si ese acto resultaba en el menoscabo del capital de la corporación. A su vez, afirmó que estos quebrantaron el Art. 8.04(b)[18] de la legislación corporativa porque con tal acción quedó un patrimonio insuficiente para que Holland satisficiera el pago de sus deudas. Otro argumento de la Comisión es que el Síndico no acumuló ni demandó a los directores por la redención de las acciones ni a Trofima y a Inversiones Potosí por adquirir de mala fe, máxime cuando el señor González Freyre resultó ser el presidente y accionista de ambas empresas, respectivamente.

En cuanto a su participación en el procedimiento adversativo, expuso que se limitó a objetar la aprobación de la estipulación y la oferta de cesión de la causa de acción cuyo precio exigido por el Síndico resultó excesivo para la Comisión. Por esta razón, adujo que tenía legitimación activa en cuanto al reclamo de la redención de las acciones, más la concebida en el Art. 12.04 de la Ley de Corporaciones, *supra,* en cuanto a que los accionistas y directores de Holland deben

---

retiraran de circulación, una vez adquiridas por la corporación y el capital corporativo sea reducido, según las disposiciones de [los Arts. 8.03 y 8.04] las secs. 3683 y 3684 de este título.

[18] Cónsono con lo anterior, el Art. 8.04(a) de la Ley de Corporaciones, *supra,* establece la forma en que, mediante una resolución corporativa, una corporación puede redimir sus acciones. Sin embargo, el inciso b del Art. 8.04 de la legislación señala lo siguiente:

[N]o se realizará o efectuará reducción alguna del capital a menos que los activos de la corporación que queden, luego de tal reducción, sean suficientes para satisfacer cualesquiera deudas de la corporación para cuyo pago no se hubiere provisto de otra manera. Ninguna reducción del capital librará de responsabilidad a ningún accionista que no haya pagado totalmente sus acciones.

responder por el remanente de la *Sentencia* insatisfecha en el caso por desahucio, esto luego de la distribución correspondiente que ejecute el Síndico.[19] Por lo tanto, concluyó que no era necesaria la comparecencia de Holland por sí ni por conducto del Síndico como representante de la empresa.

Luego de varios trámites procesales que son innecesarios pormenorizar, el 13 de diciembre de 2019 el Tribunal de Primera Instancia notificó una *Sentencia* mediante la cual desestimó la *Demanda* en su totalidad.[20] El dictamen recogió todos los planteamientos de los demandados y concluyó que aplicaba la doctrina de cosa juzgada estatal por impedimento colateral por sentencia, pues la controversia

---

[19] El Art. 12.04 de la Ley de Corporaciones, supra, establece una excepción al principio de responsabilidad limitada para presentar acciones contra los oficiales, directores o accionistas para exigir el cumplimiento de obligaciones de la corporación y procurar la satisfacción de una sentencia insatisfecha. En específico, el referido articulado postula lo siguiente:

(a) Cuando los oficiales, directores o accionistas de cualquier corporación estén obligados a pagar las deudas, o cualquier parte de las deudas de la corporación, según lo dispuesto en este subtítulo, cualquier acreedor podrá entablar una acción en contra de uno o más de ellos. En la demanda se consignará la reclamación en contra de la corporación y el fundamento por el cual el demandante espera recobrar de los demandados personalmente.

(b) No se entablará pleito alguno contra ningún oficial, director o accionista por deuda u obligación de la corporación de la cual es oficial, director o accionista, hasta que se dicte sentencia final en contra de la corporación, y que la ejecución de la misma permanezca insatisfecha ni después de tres (3) años a partir de la fecha de tal sentencia, y cualquier oficial, director o accionista podrá levantar cualquier defensa que la corporación hubiere podido levantar contra tal deuda u obligación. Este inciso [b] no aplicará a los pleitos que se entablen contra oficiales o directores de una corporación que estén en proceso de disolución por mala administración, en el ejercicio de sus funciones con arreglo al Capítulo 229 de este subtítulo. […]

[20] Petición de *certiorari*, Apéndice, págs. 385-399.

respecto a la redención de las acciones se adjudicó con la aprobación de la estipulación en el procedimiento adversativo. Además, señaló que allí la Comisión litigó y que el Síndico le ofreció adquirir la causa de acción contra el señor González Freyre y que la Comisión la rechazó. En esa dirección, el foro primario determinó que, dado que el Síndico es el representante exclusivo del caudal Holland, la Comisión no tenía legitimación activa para presentar la causa de acción. Finalmente, además de que la Comisión no acumuló a Holland en el pleito, el tribunal de instancia expuso que la empresa no podía ser acumulada en el litigio por estar cobijada por la Ley de Quiebras.

La Comisión solicitó sin éxito la reconsideración del dictamen e inconforme apeló la *Sentencia* ante el Tribunal de Apelaciones.[21] En el recurso de apelación reiteró los argumentos respecto a las controversias de cosa juzgada, falta de legitimación y parte indispensable. Sin embargo, el Tribunal de Apelaciones confirmó la *Sentencia* apelada.[22]

En lo concerniente a la aplicación de la doctrina de cosa juzgada por impedimento colateral por sentencia, el foro apelativo intermedio expuso que en el procedimiento adversativo el Síndico procuró anular el traspaso, rescindió la transferencia, recuperó las deudas de Holland y solicitó remedios en equidad. Concluyó que se solicitó esencialmente lo mismo que en el pleito actual, a saber: la rescisión de

---

[21] Petición de *certiorari*, Apéndice, págs. 60-79.

[22] *Íb*., págs. 38-59.

la redención de las 800 acciones preferidas en fraude de los acreedores de Holland.

A lo anterior el foro apelativo intermedio añadió que la Comisión participó en el proceso de la aprobación de la estipulación cuando objetó y planteó que la transferencia era revocable al amparo de la Ley de Corporaciones, *supra*. Destacó que la Comisión tuvo la oportunidad de adquirir la causa de acción ante el Tribunal de Quiebras o financiar el litigio, sin embargo declinó la oferta por elementos económicos. Asimismo, esgrimió que la Comisión compareció como uno de los acreedores de Holland en el *Claim Register Analysis* y solo le restaba esperar que el Síndico culminara la distribución del dinero de Holland. De este modo razonó que hubo una adjudicación anterior válida, final y fundamentada en hechos esenciales que atendió la controversia sobre la redención de las acciones y por eso concluyó que el foro de instancia podía desestimar la demanda por cosa juzgada.

Con relación al argumento sobre legitimación activa de la Comisión, el Tribunal de Apelaciones determinó que, una vez Holland entró en el proceso de quiebra, el Síndico era el único con la capacidad exclusiva de representar a la corporación. Coincidió con el tribunal de instancia en que los derechos de Holland se afectarían con la adjudicación del presente caso pues, a pesar de ser parte indispensable, la corporación no era acumulable porque estaba protegida por las disposiciones del Código de Quiebras. Para el foro apelado

las reclamaciones en el presente litigio son parte del caudal de Holland que será distribuido por el Síndico.

La Comisión no logró persuadir al tribunal apelado para que reconsiderara el dictamen, por ello recurrió ante nos con los señalamientos esbozados en los foros *a quo*.

Luego de atender los alegatos de las partes comparecientes, nos encontramos listos para resolver.

II

**A. Aspectos generales del procedimiento de quiebra y las facultades del Síndico de Capítulo 7 ante el Tribunal de Quiebras**

El Tribunal Supremo de Estados Unidos ha expresado que las características críticas de cada procedimiento de quiebra son el ejercicio de la jurisdicción exclusiva sobre todos los bienes del deudor, la distribución equitativa de esos bienes entre los acreedores del deudor y la descarga final que le da al deudor un "nuevo comienzo" al liberarlo de una mayor responsabilidad por deudas antiguas.[23] Claro está, el trámite es más complejo pues, una vez peticionada la quiebra, automáticamente se detiene toda acción civil que cualquier persona natural o jurídica haya iniciado, pueda iniciar, intente continuar o quiera ejecutar **contra el deudor**.[24] Esta

---

[23] Central Virginia Community College v. Katz, 126 S.Ct. 990, 996, 546 U.S. 356, 363-364 (2006) ("Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a "fresh start" by releasing him, her, or it from further liability for old debts".) Véase Allende Pérez v. García, 150 DPR 892, 898 (2000).

[24] Hemos expresado que el efecto principal de una petición de quiebra es la paralización automática (*automatic stay*) y es la protección más básica e importante a favor del deudor. Requena Mercado v. Policía de Puerto Rico, 205 DPR 285, 291 (2020); Allied Management Group, Inc. v. Oriental

protección que emana de la paralización automática (*automatic stay*), generalmente "*es exclusiva del deudor que se acoge a la quiebra*, por lo cual '[l]a responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste'".[25] **Con este esquema se garantiza el ejercicio de cualquier acción que un acreedor tenga contra cualquier otra persona que se haya obligado conjuntamente con el deudor quebrado.**[26]

Además, por disposición legal se crea un caudal de quiebra (*Bankruptcy Estate*). El patrimonio está compuesto por los activos y pasivos que el deudor tenía antes de solicitar la quiebra que, a su vez, estará sujeto a la jurisdicción del Tribunal de Quiebras.[27] La jurisdicción del foro está fundamentada en el deudor y su caudal, no en los acreedores.[28] Otro factor de gran importancia es que existen varias categorías de quiebras, las cuales están gobernadas por distintos capítulos del Código de Quiebras. Para poder acogerse a uno de los capítulos de quiebra es imperativo que

---

Bank, 204 DPR 374, 388 (2020); Marrero Rosado v. Marrero Rosado, 178 DPR 476, 491 (2010).

[25] Allied Management Group, Inc. v. Oriental Bank, *supra*; Peerles Oil v. Hnos Torres Pérez*, 186 DPR 239, 257 y 259 (2012); Cámara Insular Etc. v. Anadón, 83 DPR 374, 380 (1961); 11 USCA sec. 524(e); 3 *Collier on Bankruptcy* Sec. 362.03[3][d], págs. 362-328 (16ta ed. 2019).

[26] Allied Management Group, Inc. v. Oriental Bank, *supra*; Peerles Oil v. Hnos Torres Pérez*, supra*, pág. 256, Cámara Insular Etc. v. Anadón, *supra*.

[27] Allende Pérez v. García, *supra*; 11 USC sec. 541.

[28] Central Virginia Community College v. Katz, *supra*. ("In bankruptcy, 'the court's jurisdiction is premised on the debtor and his estate, and not on the creditors." [Tennessee Student Assistance Corporation v. Hood*, 541 U.S. 440, 447 (2002)]).

el peticionario cumpla con los requisitos que exige el ordenamiento jurídico federal.

En lo pertinente, el Capítulo 7 es una de las alternativas que puede procurar una corporación.[29] En términos generales, el Capítulo 7 del Código de Quiebras conlleva la liquidación expedita del patrimonio del deudor.[30] Además, obligatoriamente se nombra un Síndico para que convierta en efectivo todos los activos del deudor y, conforme con la ley, los distribuya entre los acreedores.[31] Como representante único del patrimonio, el Síndico tiene la capacidad exclusiva de demandar y ser demandado **en el interés del caudal del deudor**.[32]

De forma paralela, la Regla 6009 de Procedimiento de Quiebras, 11 USC R. 6009, dispone que el Síndico, con o sin aprobación del Tribunal de Quiebras, puede procesar, intervenir y defender cualquier acción pendiente por o contra el deudor, o comenzar y procesar cualquier acción o procedimiento en el interés del caudal ante cualquier tribunal.[33] Es decir, a menos que el deudor establezca que está exento, una causa de acción formará parte del patrimonio

---

[29] Czyzewski v. Jevic Holding Corp., 137 S.Ct. 973, 978 (2017) ("A business may file for bankruptcy under either Chapter 7 or Chapter 11".)

[30] Véase 11 USC sec. 704.

[31] Czyzewski v. Jevic Holding Corp., *supra*. (In Chapter 7, a trustee liquidates the debtor's assets and distributes them to creditors".) Véase Allende Pérez v. García, *supra*.

[32] Allende Pérez v. García, *supra*; Matter of Heath, 115 F.3d 521 (7th Cir.1997); Detrick v. Panalpina, Inc., 108 F.3d 529, 535 (4th Cir.1997); 11 USC sec. 323.

[33] Allende Pérez v. García, *supra*, pág. 901.

y su derecho a demandar se transfiere al Síndico, y el deudor o cualquier otra parte pierden la capacidad para presentar la acción.[34] Nótese que en el caudal del deudor se incluyen las causas de acción de las cuales el deudor tenga derecho al comienzo de la quiebra.[35]

Cabe destacar que la sección 501(a) del Código de Quiebras, 11 USC sec. 501(a), permite que un acreedor presente un reclamo (*Proof of claim*) que tenga contra el deudor. Sin embargo, de acuerdo con la Regla 3002(a) de Procedimiento de Quiebras, 11 USC R. 3002(a), cuando la petición de quiebra es conforme al Capítulo 7 es imperativo que un acreedor presente su reclamo, de lo contrario lo pierde.[36]

Una quiebra al amparo del Capítulo 7 se torna compleja cuando hay activos para distribuir a los acreedores o transferencias preferenciales o fraudulentas que deben

---

[34] Allende Pérez v. García, *supra*; Matter of Raymond Const. Co. of Florida, Inc., 6 B.R. 793 (MD. Fla. 1980); In re Mortgage America Corp., 714 F.2d 1266 (5to Cir. 1983); Sizemore v. Arnold, 647 N.E.2d 697 (Ind. Ct. App. 1995).

[35] In re Berris, 458 B.R. 601, 610 (Bkrtcy.S.D.Fla.,2011) ("An estate includes all legal claims owned by the debtor, which claims are vested in the bankruptcy trustee, who serves as the estate's legal representative. While broad in scope, the definition of 'property of the estate' as including all legal and equitable property interests that the debtor possessed at the commencement of the case, is nonetheless subject to temporal limitation".) (Citas omitidas). In re Simply Essentials, LLC, 640 B.R. 922, 928 (Bkrtcy.N.D.Iowa, 2022) ("Legal causes of action are included within the broad scope of [11 USC sec. 541]".) (Citas omitidas).

[36] In re Falwell, 434 B.R. 779, 783 (2009) ("In chapter 13 cases and chapter 7 cases, a creditor must file a proof of claim in order to receive a distribution from property of the estate. *See* Fed.R.Bankr.P. 3002(a).")

recuperarse.[37] Sobre este particular es meritorio añadir que la sección 523(a)(2)(A) del Código de Quiebras, 11 USC sec. 523(a)(2)(A), no permite que en los casos al palio del Capítulo 7 se descarguen las transferencias preferenciales o fraudulentas ejecutadas por el deudor.[38] De hecho, el Tribunal Supremo Federal ha expresado que la deuda creada mediante un acto de fraude del deudor no es descargable ni a ese acreedor se le debe aplicar la doctrina de *res judicata*.[39]

A esos fines, uno de los mecanismos que el Síndico tiene a su haber es la presentación de un procedimiento adversativo que, en esencia, es una demanda subsidiaria dentro del marco más amplio de un caso de quiebra.[40] La Regla 7001 de Procedimiento de Quiebras, 11 USC R. 7001, establece que un procedimiento adversativo constituye una causa de

---

[37] The Chapter 7 trustee, 2 Bankruptcy Law Manual; Chapter 7 of the Bankruptcy Code: Liquidation, sec. 10:9 (5th ed.) (2022)("In the more complex Chapter 7 case, especially one where there are assets for distribution to creditors or preferential or fraudulent transfers to be pursued, the trustee serves as the representative of the estate aggressively looking for ways to maximize assets that can be distributed to unsecured creditors".).

[38] Husky Intern. Electronics, Inc. v. Ritz, 578 U.S. 356, 359 (2016) El Tribunal Supremo Federal expresó que en la actualidad la sección 523(a)(2)(A) del Código de Quiebra postula: "A discharge under [Chapters 7, 11, 12, or 13] of this title does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud." Posteriormente, al aclarar lo que implica fraude dispuso "from the beginning of English bankruptcy practice, courts and legislatures have used the term "fraud" to describe a debtor's transfer of assets that, like Ritz' scheme, impairs a creditor's ability to collect the debt". *Íb.* pág. 360.

[39] Brown v. Felsen, 442 U.S. 127 (1979).

[40] In re Financial Oversight and Management Board for Puerto Rico, 872 F.3d 57, 63 (C.A.1 Puerto Rico 2017) ("[A]n adversary proceeding is a subsidiary lawsuit within the larger framework of a bankruptcy case"). In re Halvorson, 607 B.R. 680, 684 (Bkrtcy.C.D.Cal. 2019); In re Wiley, 237 B.R. 677 (Bankr. N.D. Ill. 1999). ("'Adversary proceedings' are subactions raised within a bankruptcy case and commenced by the filing of a complaint").

acción para recuperar dinero perteneciente al caudal del deudor.[41] Por lo que, en ese contexto, un Síndico puede presentar un procedimiento adversativo en el Tribunal de Quiebras o en cualquier otro tribunal para que se determine que ciertas transferencias deben ser anuladas o conservadas para beneficio del caudal quebrado.[42]

Igualmente, a pesar de que, a modo general, un Síndico puede transar una causa de acción sin la aprobación del deudor[43] y con la objeción de los acreedores,[44] toda estipulación requiere la aprobación del Tribunal de Quiebras quien, a su vez, puede considerar las objeciones de los acreedores, sin que estos controlen la aprobación de la transacción.[45] Una vez el Tribunal de Quiebras aprueba una

---

[41] In re Financial Oversight and Management Board for Puerto Rico, 631 B.R. 589, 593 (DPR2021). ("Bankruptcy Rule 7001 provides, in relevant part, that the following are adversary proceedings: '(1) a proceeding to recover money or property ...; (2) a proceeding to determine the validity ... or extent of a lien or other interest in property ...; [or] (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing[.]' Fed. R. Bankr. P. 7001".)

[42] Matter of Lake Hopatcong Water Corp., Bkrtcy.D.N.J.1981, 15 B.R. 411. ("Trustee in bankruptcy is empowered to file an adversary proceeding in bankruptcy court or any other court to determine whether certain transfers shall be voided or preserved for the benefit of the bankrupt estate."). Véase López v. J. Gus Lallande, 144 DPR 774 (1998) (Un síndico puede presentar una causa de acción al amparo de la sec. 544(b) del Código de Quiebras y de la Ley de Corporaciones de Puerto Rico en contra de los directores y accionistas de una empresa en el foro estatal para anular la distribución de la totalidad de activos realizada entre los accionistas de la corporación quebrada).

[43] In re New Concept Housing, Inc., 951 F.2d 932, 938 (C.A.8 (Mo.),1991) ("A bankruptcy trustee can settle claims without the debtor's approval".) En el contexto de las excepciones, véase In re Nangle, 288 B.R. 213, 216 (8th Cir.BAP (Mo.),2003) citando In re Marlar, 252 B.R. 743, 748 (8th Cir. BAP 2000)).

[44] In re New Concept Housing, Inc., 951 F.2d 932, 938 (C.A.8 (Mo.),1991) ("In re Apex Oil Co., 92 B.R. 847 (Bankr.E.D.Mo.1988) (approving settlement even though creditors objected")).

[45] In re Bondanelli, 2020 WL 1304140, (9th Cir.BAP (Cal.), 2020) ("The opposition of the creditors of the estate to approval of a compromise may

estipulación, de ordinario, tiene el mismo efecto de *res judicata* tal como una sentencia en los méritos.[46] En otras palabras, los contornos relacionados a la norma de *res judicata* aplican a los procedimientos de quiebra.[47]

### B. *Res judicata* federal

Cuando se presenta ante el Tribunal de Primera Instancia una sentencia federal para formular la defensa de *cosa juzgada* es necesario analizar el fundamento invocado que alcanzó la jurisdicción federal.[48] Este análisis determinará si aplica la doctrina de cosa juzgada federal o se emplea la doctrina estatal.[49] Sobre el particular hemos expresado:

> [E]n aquellas circunstancias en las que el Tribunal Federal asumió jurisdicción al amparo de la doctrina de cuestión federal, se aplicará la norma federal de cosa juzgada para impedir que se litigue un caso nuevamente en el foro estatal. En cambio, en aquellas circunstancias en las que el foro federal

---

be considered by the court, but is not controlling *and will not prevent approval of the compromise where it is evident that the litigation would be unsuccessful and costly.* In short, creditors have a voice but not a veto. Thus, a bankruptcy court may approve a settlement even over strenuous creditor objections"). (Citas omitidas).

[46] Gould v. U.S., 229 F.3d 1142 (C.A.4 (Va.), 2000) ("Generally, court-approved settlements receive the same res judicata effect as litigated judgments. See *Hoxworth v. Blinder*, 74 F.3d 205, 208 (10th Cir. 1996); accord *In re Medomak Canning*, 922 F.2d 895, 900 (1st Cir.1990)").

[47] In re Tzanides, 574 B.R. 489, 516 (2017) ("Although the contours of a bankruptcy case make its application somewhat more difficult than in other contexts, the doctrine of res judicata is fully applicable to bankruptcy court decisions. Moreover, *res judicata* is applicable to final orders issued by the bankruptcy court. *See, e.g.*, *NovaCare Holdings, Inc. v. Mariner Post-Acute Network, Inc.*") (Citas omitidas).

[48] Presidential v. Transcaribe, 186 DPR 263, 278 (2012).

[49] Presidential v. Transcaribe, *supra*; Santiago, González v. Mun. De San Juan, 177 DPR 43 (2009).

asumió jurisdicción por diversidad de ciudadanía, se aplicará la norma estatal de cosa juzgada.[50]

Por lo tanto, si nos encontramos ante un dictamen del foro federal cuya jurisdicción se fundamentó en un estatuto federal se regirá por la doctrina de *res judicata* federal. "[E]l efecto de cosa juzgada que tendrá la decisión federal será determinado por las normas pautadas por el Tribunal Supremo de Estados Unidos".[51]

De acuerdo con el Máximo Foro Federal, "una sentencia que adviene final y firme constituye *res judicata* para las partes y sus causahabientes (*privies*),[52] no sólo en cuanto a todo lo que se alegó y se admitió para sustentar o derrotar una reclamación, sino en cuanto a todo otro asunto que pudo haberse planteado a esos efectos, siempre y cuando se le haya dado a la parte una oportunidad justa de ser oída."[53] Esta doctrina tiene el "interés de proteger a las partes del costo y dificultad que implica tener que lidiar con múltiples

---

[50] <u>Presidential v. Transcaribe</u>, *supra*, págs. 278-279; <u>Martínez Díaz v. E.L.A.</u> 182 DPR 580 (2011); <u>Santiago, González v. Mun. De San Juan</u>, *supra*.

[51] <u>Santiago, Gonzalez v. Mun. de San Juan</u>, *supra*, pág. 50. Véase <u>Taylor v. Sturgell</u>, 553 U.U. 880, 892 (2008). En este punto es oportuno aclarar que, en los términos y condiciones de la estipulación del presente caso, se incluyó una cláusula de selección de ley y lo expresa de la manera siguiente: "g) This Agreement shall be governed by and construed in accordance with the Law of the Commonwealth of Puerto Rico as to all matter." Petición de *certiorari*, Apéndice, pág. 237. Debido a que nos encontramos ante un asunto de cuestión federal discutiremos la Opinión con arreglo a las normas de *res judicata* federal establecidas por el Tribunal Supremo de Estados Unidos.

[52] Como abundaremos más adelante, en el ámbito de la doctrina de *res judicata*, el concepto de *privity* o nexo jurídico incluye el término causahabientes y lo hemos definido como una relación mutua o de sucesión de derechos. <u>Lawton v. Rodríguez Rivera</u>, 38 DPR 38, 45 (1928). Asimismo, se conoce como mutualidad de intereses. <u>U.P.R. v. Laborde Torres y Otros II</u>, 180 DPR 438, 444 (2010).

[53] <u>Marrero Rosado v. Marrero Rosado</u>, *supra,* pág. 496; <u>Travelers Indemnity v. Pearlie Bailey</u>, 129 S.Ct. 2195, 2205 (2009).

litigios, y los objetivos de conservar los recursos judiciales y fomentar la confianza en los procesos judiciales al minimizar la posibilidad de decisiones inconsistentes."[54]

*Res judicata* es un término colectivo para referirse a dos doctrinas separadas, a saber: la de cosa juzgada (*claim preclusion*) y la de impedimento colateral por sentencia (*issue preclusion*).[55] En cuanto a la primera vertiente, cosa juzgada o *claim preclusion*, esta impide la relitigación de las mismas causas de acción sin importar que en el primer y segundo pleito se fundamenten en leyes distintas.[56] Cosa juzgada federal requiere que entre ambos pleitos existan: (1) identidad de partes y sus causahabientes, (2) identidad de causas de acción y (3) una sentencia que haya adjudicado los méritos de las mismas controversias.[57]

Por otro lado, la modalidad de *issue preclusion* o impedimento colateral por sentencia federal imposibilita que en un segundo pleito se relitiguen cuestiones de hechos o derecho que resultaron necesarias para la adjudicación de un litigio anterior, ya sea por la misma causa de acción u otra distinta, siempre que sea entre las mismas partes o sus causahabientes (*privies*).[58] Para que aplique la vertiente de

---

[54] Marrero Rosado v. Marrero Rosado, *supra*; Taylor v. Sturgell *supra*, Montana v. United States, 440 U.S. 147 (1979).

[55] Taylor v. Sturgell, *supra*; Marrero Rosado v. Marrero Rosado, *supra*.

[56] Marrero Rosado v. Marrero Rosado, *supra*, pág. 497; Taylor v. Sturgell, *supra*; New Hampshire v. Maine, 532 U.S. 742, 748 (2001).

[57] Marrero Rosado v. Marrero Rosado, *supra*; Taylor v. Sturgell, *supra*, New Hampshire v. Maine, *supra*.

[58] Marrero Rosado v. Marrero Rosado, *supra*; Taylor v. Sturgell, *supra*.

*issue preclusion* tienen que concurrir los elementos siguientes: "(1) el asunto de hecho o derecho sea el mismo en ambos pleitos; (2) se haya litigado en un pleito anterior; (3) se haya determinado mediante una sentencia final, y (4) la determinación haya sido esencial para el fallo."[59]

La identidad de partes o sus causahabientes (*privies*) es un elemento neurálgico en las dos modalidades de *res judicata*. En específico, la jurisdicción federal define *privity* como "'[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property).' Además, se reconoce otra acepción al vocablo, a saber: '[m]utuality of interest'".[60] Igualmente se conoce como nexo jurídico, por eso incluye el término causahabiente.[61]

La doctrina de *res judicata* federal no es absoluta, pues el Tribunal Supremo Federal expresó que: "that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."[62] Así, la norma de *res judicata* está limitada a los parámetros del derecho a un

---

[59] Marrero Rosado v. Marrero Rosado, *supra*; Coors Brewing Co. v. Méndez-Torres, 562 F.3d 3, 8 (1er Cir. 2009).

[60] U.P.R. v. Laborde Torres y Otros II, 180 DPR 438, 444 (2010).

[61] Véase escolio Núm. 52.

[62] Taylor v. Sturgell, *supra*, pág. 884; Hansberry v. Lee, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

debido proceso de ley.[63] Esto se debe a que una persona que no fue parte en una demanda generalmente no ha tenido una oportunidad plena y justa de litigar las reclamaciones y cuestiones resueltas en un pleito. Por lo tanto, aplicarle el efecto de cosa juzgada a quienes no fueron parte choca con la tradición histórica profundamente arraigada de que cada uno debería tener su día en corte.[64]

En Taylor v. Sturgell, 553 U.S. 880 (2008) el Tribunal Supremo de Estados Unidos atendió, por primera vez y en el ámbito de una cuestión federal, la figura de la representación virtual como excepción a la regla general de que a una persona que no fue parte le apliquen la doctrina de *res judicata*. Los tribunales inferiores habían desarrollado distintos escenarios o factores no uniformes e incluso de aplicación arbitraria a los cuales se le denominó representación virtual, esto como una modalidad de *privity* para aplicar la norma de *res judicata* a quienes no fueron parte de un litigio anterior.

En este caso aconteció que el Sr. Brent Taylor presentó una causa de acción contra la Federal Aviation Administration (FAA) al amparo de la *Freedom of Information Act* para que la agencia le entregara copia de los documentos relacionados a la fabricación del avión modelo F-45 producido por Fairchild

---

[63] Taylor v. Sturgell, *supra*, pág. 891; Richards v. Jefferson County, 517 U.S. 793, 797 (1996).

[64] Taylor v. Sturgell, *supra*, págs. 892-893 ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court." *Richards*, 517 U.S., at 798, 116 S.Ct. 1761".).

Engine and Airplane Corporation (Fairchild). Previamente, y en un procedimiento administrativo ante la FAA, el Sr. Greg Herrick, amigo del señor Taylor, solicitó sin éxito la misma información.

El Tribunal Federal para el Distrito de Columbia reconoció que el señor Taylor no fue parte en ese trámite administrativo, pero determinó que este resultó representado virtualmente por el señor Herrick, por cuanto el señor Taylor estaba impedido de litigar el asunto porque sus intereses estuvieron adecuadamente representados por el señor Herrick ante la FAA. Cimentó su decisión en que el señor Herrick tuvo un fuerte incentivo para litigar y el señor Taylor contrató los servicios del mismo abogado porque, según concluyó el foro, este se encontró satisfecho con la labor que ejecutó el letrado en el caso del señor Herrick.

Antes de discutir la controversia medular sobre la teoría de representación virtual desarrollada por los foros inferiores, el Tribunal Supremo Federal precisó delimitar las circunstancias reconocidas que acarrean el *nonparty preclusion*. En otras palabras, aplica la doctrina de cosa juzgada federal a quienes no fueron parte en un litigio en los escenarios siguientes: 1) cuando una persona que no fue parte -expresa o implícitamente o mediante su conducta- acepta obligarse a los acuerdos alcanzados por otros que fueron parte en una causa de acción;[65] (2) si existe una

---

[65] Taylor v. Sturgell, *supra*, págs. 893-894. ("First, '[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement.'") *Íb.*,

relación jurídica sustancial o *privity* entre la persona obligada y la que fue parte en una sentencia;[66] (3) si una persona que no fue parte estuvo adecuadamente representada por alguien con los mismos intereses y que fue parte en el litigio (pleitos de clase, presentados por fideicomisarios, tutores, fiduciarios);[67] (4) la persona que no fue parte asumió el control sobre el litigio en el cual se dictó sentencia;[68] (5) la persona que fue parte no puede impedir la

---

esc. 7. ("The Restatement observes that a nonparty may be bound not only by express or implied agreement, but also through conduct inducing reliance by others.").

[66] Taylor v. Sturgell, *supra*, pág. 894. ("Second, nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment. […] Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. […]. These exceptions originated 'as much from the needs of property law as from the values of preclusion by judgment.'") (Citas omitidas) En el esc. 8 de Taylor v. Sturgell, *supra,* el Tribunal Supremo Federal aclaró lo siguiente:

> The substantive legal relationships justifying preclusion are sometimes collectively referred to as "privity." *e.g., Richards v. Jefferson County,* 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996); 2 Restatement § 62, Comment *a*. **The term "privity," however, has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground.** […] To ward off confusion, we avoid using the term "privity" in this opinion. (Énfasis suplido).

[67] Taylor v. Sturgell, *supra*, págs. 894-895. ("Third, we have confirmed that, "in certain limited circumstances," a nonparty may be bound by a judgment because she was "adequately represented by someone with the same interests who [wa]s a party" to the suit. *Richards,* 517 U.S., at 798, 116 S.Ct. 1761 (internal quotation marks omitted). Representative suits with preclusive effect on nonparties include properly conducted class actions, […] and suits brought by trustees, guardians, and other fiduciaries, […]. See also 1 **Restatement § 41**".) (Énfasis suplido)(Citas omitidas). Restatement (Second) of Judgments § 41 (1982). ("A trustee **of a trust** has authority to represent the estate, and the interests of those who are its beneficiaries".). (Énfasis suplido).

[68] Taylor v. Sturgell, *supra*, pág. 895. ("Fourth, a nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered. Because such a person has had 'the opportunity to present proofs and argument,' he has already "had his day in court" even though he was not a formal party to the litigation.") (Citas omitidas).

relitigación a través de otro, es decir, por *proxy*;[69] y (6) la existencia de un esquema estatutario que impide los litigios sucesivos.[70]

En *Taylor*, supra, tanto Fairchild como la FAA pretendían la inclusión de la representación virtual como un tipo de *nonparty preclusion* fundamentado en que la relación entre ambos señores era lo suficientemente cerca como para incluir a un segundo litigante (el señor Taylor) en la primera sentencia (dictada por la FAA contra el señor Herrick). El Foro Supremo Federal tajantemente rechazó este planteamiento por tres razones.

Primero, reiteró que un litigante no está obligado por una sentencia de un pleito que no fue parte, a menos que le aplique alguna de las circunstancias limitadas delineadas en el *nonparty preclusion*. En segundo lugar, se rehusó ampliar

---

[69] Taylor v. Sturgell, *supra*.("Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy. Preclusion is thus in order when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication. […] And although our decisions have not addressed the issue directly, it also seems clear that preclusion is appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment."). (Citas omitidas).

[70] Taylor v. Sturgell, *supra*.("Sixth, in certain circumstances a special statutory scheme may "expressly foreclos[e] successive litigation by nonlitigants ... if the scheme is otherwise consistent with due process." […] Examples of such schemes include bankruptcy and probate proceedings,[…] and *quo warranto* actions or other suits that, "under [the governing] law, [may] be brought only on behalf of the public at large," *Richards,* 517 U.S., at 804, 116 S.Ct. 1761".) En cuanto a esta última cita el Tribunal Supremo de Estados Unidos en Richards v. Jefferson Cnty., supra, pág. 799 expresó lo siguiente:

> Additionally, where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate, legal proceedings may terminate pre-existing rights if the scheme is otherwise consistent with due process. See *NLBR v. Bildisco & Bildisco*, 465 US 513, 529-530, n.10 (1984) '([P]roof of claim must be presented to the Bankruptcy Court … or be lost').

o incluir la teoría de representación virtual en las limitaciones contenidas en la representación adecuada. Entiéndase, pleitos de clase, tutores, fideicomisarios, etcétera. Recalcó que la representación adecuada que activa la doctrina de *res judicata* nace si, como mínimo, (1) los intereses entre la parte ausente y su representante están alineados y (2) la parte obligada entendió que estaba actuando en calidad de representante o el tribunal original se encargó de proteger los intereses de la persona ausente; (3) la representación adecuada también puede requerir notificación de la demanda original a las personas que supuestamente han sido representadas.[71]

Por último, los argumentos y el balance propuesto de Fairchild y de la FAA para aplicar la teoría de representación virtual al caso de *Taylor*, supra, crearía más dolores de cabeza de los que aliviaría.[72] Es decir, se complicaría significativamente la labor de los tribunales de instancia a enfrentarse con cuestiones de cosa juzgada, por cuanto si se considera todas las cosas para aplicarla se desencadenaría un descubrimiento de prueba amplio, costoso y que consumiría mucho tiempo solo para considerar los factores diseñados por los foros inferiores.[73]

---

[71] Taylor v. Sturgell, *supra*, pág. 900; Hansberry v. Lee, *supra*, pág. 43; Richards v. Jefferson County, *supra*, págs. 801-802.

[72] Taylor v. Sturgell, *supra*, págs. 900-901. ("Third, a diffuse balancing approach to nonparty preclusion would likely create more headaches than it relieves.").

[73] *Íb.*

Al revocar la teoría de representación virtual, el Tribunal Supremo Federal expresó "[t]he preclusive effects of a judgment in a federal-question case decided by a federal court should instead be determined according to the established grounds for nonparty preclusion described in this opinion."[74] Y es que, según el Alto Foro Federal, hubo casos donde los foros inferiores descansaron en la representación virtual para extender la doctrina de cosa juzgada federal a quienes no fueron parte en un litigio más allá de los límites propios de la norma y de los precedentes del Tribunal Supremo Federal.[75] Con ese análisis en, *Taylor*, supra, se concluyó que la representación virtual "has cast more shadows than light on the problem [of nonparty preclusion]."[76] Así, luego de evaluar las particularidades del *nonparty preclusion*, el Tribunal Supremo Federal determinó que no aplicaba la doctrina de *res judicata*.

Ahora bien, aunque la doctrina de *res judicata* es plenamente aplicable a las decisiones del Tribunal de Quiebras, su adjudicación suele ser más difícil que en otros contextos.[77] Hay que tomar en cuenta que un trámite de quiebra

---

[74] Taylor v. Sturgell, *supra*, pág. 904. Esa expresión tuvo el efecto de derogar Tyus v. Schoemehl*,* 93 F.3d 449 (1996) y Kourtis v. Cameron*,* 419 F.3d 989, 996 (2005).

[75] Taylor v. Sturgell, *supra*.

[76] *Íb*., pág. 904.

[77] In re Target Industries, Inc., 328 B.R. 99, 115 (2005) ("Although the contours of a bankruptcy case make its application somewhat more difficult than in other contexts, the doctrine of *res judicata* is fully applicable to bankruptcy court decisions. *See Katchen v. Landy,* 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)). In re Mariner Post-Acute Network, Inc., 267 B.R. 46, 53 (2001) ("Res judicata is applicable to bankruptcy

incluye al deudor y a los acreedores, pero además existen otras personas o partes con interés.[78] Igualmente, es de esperarse que no sea sencillo enmarcar la doctrina de *nonparty preclusion* a una persona ausente de un procedimiento adversativo dentro del trámite de quiebra.

## C. *Privity* como precondición para el *nonparty preclusion* en un procedimiento de quiebras

Primeramente, debemos demarcar el concepto de *privity* en el contexto de un trámite de quiebra. En <u>In re Hansen</u>, 368 B.R. 868 (2007), el Tribunal Apelativo Federal para el Noveno Circuito se expresó en torno a esta figura de la manera siguiente:

> A person is in privity when that person is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." […]The concept was traditionally limited to certain "legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest," such as co-owners of property, decedents and heirs, joint obligees, etc. […] However, it now includes almost any relationship in which "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest.... [P]rivity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases[.]" […]
>
> Still, parallel legal interests are not sufficient to establish privity. It must be shown that the subsequent plaintiff's interests were adequately represented by the plaintiff in the former litigation.[79]

---

court orders, application of that doctrine in bankruptcy cases is not as straightforward as in other cases").

[78] <u>In re Mariner Post-Acute Network, Inc.</u>, *supra*. ("In contrast, in bankruptcy cases the parties in interest may include the debtor, all its creditors and all its shareholders. Additionally, a particular matter in a bankruptcy case may affect the debtor's employees, its vendors, its landlords, parties to contracts with the debtor, and numerous other parties.").

[79] <u>In re Hansen</u>, 368 B.R. 868, 879 (2007).

Claramente, el concepto de *privity* define la relación entre una parte ausente y la obligada en un pleito como un requisito que antecede a la aplicación del *nonparty preclusion*. **<u>Previo</u>** a la decisión de *Taylor*, supra, hubo jurisdicciones que aseguraron que existía *privity* en un escenario como el que atendemos. En concreto, en <u>In re Medomak Canning</u>, 922 F.2d 895 (1st Cir. 1990), ciertos acreedores plantearon que no fueron parte de una estipulación. En esa ocasión, el Tribunal Federal para el Primer Circuito de Boston aplicó la doctrina de *res judicata* a todos los acreedores sobre la referida estipulación que el Síndico alcanzó con otros acreedores en un procedimiento adversativo.

El tribunal apelativo federal expuso que, para propósitos de determinar la aplicabilidad de la doctrina de *res judicata,* la identidad de intereses era equivalente a *privity* y, a su vez, este concepto implicaba la representación virtual del Síndico por todos los acreedores. **Con ese preámbulo concluyó que un Síndico, además de los intereses del caudal y del deudor, representaba los intereses de todos los acreedores mediante la denominada representación virtual (*virtual representation*).** Para reforzar el dictamen, consideró que uno de los acreedores objetó pero luego retiró la objeción y el otro no presentó objeción alguna, y así determinó que estos tácitamente consintieron la actuación del Síndico aunque no estuvieran de acuerdo.

En cambio, en <u>Hoxworth v. Blinder</u>, 74 F.3d 205, 208 (1996), ocho años **antes** de *Taylor*, supra, el Tercer Circuito

del Tribunal de Apelaciones se apartó de *In re Medomak*, supra, en cuanto al *privity* por identidad de intereses entre el Síndico y todos los acreedores en el trámite de quiebra. Para aclarar, el foro apelativo federal expuso que, en efecto, hay *privity* entre el Síndico y un acreedor en lo concerniente a su reclamación no asegurada (*unsecured proof of claim*).[80] No obstante, cuando se trata de un acreedor judicial, el *privity* no se configura pues los intereses entre este y el Síndico son contrarios. Según el tribunal, un Síndico puede perseguir un reclamo en nombre de los acreedores, pero no por ello está automáticamente en *privity* con todos los acreedores.[81]

Nótese que la interpretación esbozada en *Hoxworth*, supra, es cónsona con *Taylor*, supra, en cuanto al repudio de aplicarle la doctrina de cosa juzgada federal --al amparo de la teoría de la representación virtual como un equivalente de *privity* por relación jurídica sustancial ni por identidad de intereses-- contra quien no fue parte de un procedimiento adversativo en el Tribunal de Quiebras.

Evidentemente, **luego** de la decisión en *Taylor*, supra, **los tribunales de quiebra no aplican la figura de *privity* de manera automática como se solía con la norma de *In re Medomak*, supra, y su progenie.** Por ejemplo, en The Cadle Co. v. Reed,

---

[80] Véase escolio Núm. 70.

[81] HSBC Bank (Uruguay) S.A. v. Seaboard Corporation, 2022 WL 4447416, at 22 (2022). ("The Trustee may pursue claims on behalf of creditors, but the Trustee is not automatically in privity with the creditors.[*Hoxworth*, supra, at] 208 (concluding privity did not extend from trustee to judgment creditors because their interests diverged").

392 B.R. 675 (2008) se concluyó que, luego de *In re Hansen*, supra, y de *Taylor*, supra, no procedía la aplicación de la representación virtual, pues el Síndico no podía representar adecuadamente a los acreedores porque típicamente los intereses entre estos son opuestos.[82] En sus palabras: "the interests of a settling plaintiff [trustee] and objecting creditor [are] likely [in] conflict."[83]

En esa dirección, otros tribunales han establecido que a un Síndico no le atañe cómo su litigio afectaría el pleito de un acreedor y, **si este le presta importancia al efecto que tendría el pleito, <u>solo implica que los intereses de ambos no están del todo alineados</u>**.[84] Igualmente, se ha resuelto que los intereses de un Síndico y un acreedor individual no siempre son los mismos.[85]

Por último, hay ausencia de *privity* entre un acreedor y un Síndico cuando este no tiene el derecho o la exclusividad en derecho para reivindicar un reclamo a nombre del acreedor

---

[82] <u>The Cadle Co. v. Reed</u>, 392 B.R. 675, 683 (2008).

[83] *Íb*., pág. 682.

[84] <u>In re Adilace Holdings, Inc.</u>, 548 B.R. 458, 464 (2016) ("Although the Trustee adequately represents Sullivan's interests as an unsecured creditor of the estate, the Trustee and Sullivan nonetheless also have divergent interests—the Trustee (properly) does not care how his litigation posture will affect [creditor's] litigation. That [individual creditor] *does* care about the effect of this proceeding on the [state] litigation only means that her interests are not entirely aligned with the Trustee's[…]").

[85] *Íb.* ("Federal courts have found that the interests of Trustee's and individual creditors are not always the same. *In re Hansen*, 368 B.R. 868, 879-880 (9th Cir. BAP 2007); cf. *The Cadle Co. v. Reed*, 392 B.R. 675, 683 (N.D.Tex.2008).).

o si los intereses del Síndico confligen con los del acreedor individual en una causa de acción.[86]

### D. Estándar de revisión de una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil

Nuestro ordenamiento procesal civil permite que la parte demandada peticione la desestimación de una causa de acción presentada en su contra si es evidente que de las alegaciones formuladas en la *Demanda* prosperará alguna de las defensas afirmativas que establece la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V.[87] Para conceder una moción de desestimación debemos: (1) tomar como ciertos los hechos bien alegados en la demanda; (2) analizar el ataque al vicio intrínseco en la primera alegación; y (3) tener el convencimiento judicial de que "el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor".[88]

Cónsono con lo señalado, recientemente resolvimos que el estándar de revisión de la moción de desestimación se

---

[86] In re Reichmann Petroleum Corp., 434 B.R. 790, 798 (2010) ("A trustee or debtor-in-possession is not in privity with a creditor when the trustee or debtor-in-possession does not have the right, or the exclusive right, to assert the claim on behalf of the creditor, or when the trustee's or debtor-in-possession's interests conflict with that of the individual creditor in an action. *See, e.g., The Cadle Co. v. Reed,* 392 B.R. 675, 682-83 (N.D.Tex.2008).").

[87] Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 701 (2012); Sánchez v. Aut. de los Puertos, 153 DPR 559, 569 (2001). Véase Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V.

[88] Cobra Acquisitions, LLC v. Municipio de Yabucoa, 2022 TSPR 104, 208 DPR ___ (2022); Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*,* 193 DPR 38, 49 (2015).

extiende a la solicitud de remedios alternativos.[89] Por lo tanto, una vez el juzgador analice ponderadamente que, de manera principal o en la alternativa, no existe remedio alguno en derecho, se encontrará en posición para decidir si desestima total o parcialmente una demanda.[90]

### III

Luego de analizar el marco legal que antecede, procede que examinemos la controversia medular que tenemos ante nuestra consideración. En detalle, los recurridos argumentaron la aplicación de la doctrina de cosa juzgada por impedimento colateral por sentencia estatal por varias razones: (1) porque las alegaciones del Síndico en el procedimiento adversativo son similares a las formuladas por la Comisión en la *Demanda*; (2) porque la Comisión litigó en la demanda adversativa cuando objetó la estipulación y participó en la vista de aprobación ante el Tribunal de Quiebras; finalmente (3) aducen que existe mutualidad de intereses o nexo jurídico (*privity*) porque, de acuerdo a la naturaleza del trámite de quiebras, el Síndico representó los intereses de la Comisión en el procedimiento adversativo contra el señor González Freyre. En esencia, los recurridos procuran que impongamos la doctrina de representación virtual de *In re Medomack*, supra, la cual es inconsistente con la decisión del Tribunal Supremo de Estados Unidos en *Taylor*, supra.

---

[89] Cobra Acquisitions, LLC v. Municipio de Yabucoa, *supra*.

[90] *Íb.*

A su vez, los tribunales apelados coincidieron con los recurridos. Es decir, los foros *a quo* determinaron que la *Demanda* tenía efecto de cosa juzgada por impedimento colateral por sentencia porque las alegaciones de la Comisión en la presente demanda son esencialmente las que el Síndico alegó, a saber: la rescisión de la redención de las 800 acciones preferidas de en fraude de acreedores de Holland. Así, consideraron que con la aprobación de la estipulación este asunto quedó adjudicado.

Además, los tribunales añadieron que la Comisión tuvo oportunidad de litigar en el pleito adversativo ya que objetó la estipulación, participó en la vista de aprobación y que el Síndico le extendió una oferta para adquirir la causa de acción o financiar el litigio que, a la postre, rechazó. En fin y en síntesis, los tribunales inferiores entendieron que la Comisión tuvo su día en corte en el pleito adversativo, estaba impedida de litigar el asunto adjudicado y desestimaron la totalidad de la *Demanda*.

Sin embargo, los tribunales apelados no evaluaron los eventos acaecidos en el trámite adversativo que tuvieron ante su consideración ni analizaron las alegaciones ni los remedios principales y alternativos solicitados en la *Demanda*. Simplemente, aplicaron de manera automática el efecto de cosa juzgada por impedimento colateral por sentencia al caso que nos ocupa.

Habida cuenta de que nos encontramos ante una defensa de cosa juzgada por una determinación del Tribunal Federal

de Quiebras, procedemos a resolver la controversia que nos ocupa conforme a la norma de *res judicata* federal.

Una lectura integral de la estipulación refleja que no se realizó determinación alguna respecto a la validez o no de la redención de las 800 acciones preferidas que aprobaron los directores de Holland en alegada violación a nuestro ordenamiento jurídico corporativo ni respecto a las supuestas actuaciones de mala fe ejecutadas por las empresas que recibieron el dinero del señor González Freyre. La estipulación no incluyó la liberación de los directores por haber autorizado la redención de las acciones de Holland ni relevó a Inversiones Potosí y Trofima por recibir el dinero que les transfirió el señor González Freyre.

Por otro lado, es incuestionable que las partes en el procedimiento adversativo eran el Síndico, en representación del caudal, y el señor González Freyre. El hecho de que la Comisión objetó la estipulación y su aprobación, no la hizo *per sé* parte del litigio y el que se haya negado a comprar la causa de acción tampoco implicaba, por sí solo, que fuera parte. En otras palabras, los argumentos esbozados en la oposición y el rechazo de la Comisión en adquirir la causa de acción no puede resultar en la aplicación automática de cosa juzgada. Era patente que la Comisión no fue parte en el pleito adversativo.

Ahora bien, procede que examinemos si existe identidad de partes o *privity* entre la Comisión y el Síndico en la presente *Demanda* como condición previa a la aplicación de la

norma de *nonparty preclusion* recogida por el Tribunal Supremo Federal en *Taylor*, supra, para determinar si el caso de marras tiene efecto de *res judicata*. Es decir, analizaremos si la Comisión se encuentra en alguna de las circunstancias reconocidas en *Taylor*, supra, que implique que, a pesar de que no fue parte, no se violentó su derecho a un debido proceso de ley y, en consecuencia, le aplique la doctrina de cosa juzgada federal.

De entrada, *Taylor*, supra, reconoció que una persona se obliga si expresa o implícitamente o mediante su conducta aceptó un acuerdo. Obsérvese que la Comisión no aceptó obligarse a la estipulación ni expresa ni implícitamente sino, todo lo contrario, objetó su aprobación por considerar que tanto la cantidad como los términos y condiciones no representaban los mejores intereses del caudal y, en consecuencia, de los acreedores de Holland. La conducta de la Comisión con relación al acuerdo manifiesta que no pudo confiar o descansar en el desempeño del Síndico y consideró imperativo oponerse.

Aquí quedó meridianamente claro que, de acuerdo con *Taylor*, supra, la Comisión no asumió el control del procedimiento adversativo por haberse opuesto a la aprobación de la estipulación, por lo que no se puede concluir que esta tuvo su día en corte con relación a las causas de acción de epígrafe.

Igualmente, aplicando Taylor, *supra*, la Comisión no fue un *proxy*, pues no presentó la causa de acción de epígrafe

como representante designado o agente del Síndico mucho menos de Holland que resultó el demandante en el pleito adversativo. La Comisión incoó la *Demanda* contra los directores, oficiales y accionistas de Holland, incluso el señor González Freyre y las empresas Trofima e Inversiones Potosí.

Además, a excepción del reclamo (*Proof of claim*) que de no haberlo presentado lo perdía, no nos encontramos ante un esquema reglamentario ni estatutario federal que impida que la Comisión pueda presentar el litigio de epígrafe contra el señor González Freyre y el resto de los directores, accionistas y oficiales de Holland a cargo de la redención de las acciones. Es decir, estamos ante una estipulación en la que no se adjudicó la validez o no de la redención de las acciones.

Resta entonces considerar dos escenarios del *nonparty preclusion* de *Taylor*, supra, que resultan neurálgicos para concluir. Debemos evaluar si, por las particularidades del presente caso, existe una relación jurídica sustancial entre el Síndico y la Comisión o si los intereses de esta fueron adecuadamente representados por el Síndico. A tenor con *Taylor*, supra, la jurisprudencia en materia de quiebra esbozada y los pormenores en el caso de marras, los intereses entre el Síndico y la Comisión son divergentes y el nexo jurídico es inexistente. Esto es así porque, si bien la finalidad de recuperar dinero del y para el caudal es para la eventual distribución entre los acreedores, evidentemente,

en ese litigio adversativo, el deber de fiducia del Síndico se inclinó hacia Holland y no a la Comisión. Por lo tanto, de ninguna manera se puede concluir que, en este escenario, existió una relación jurídica sustancial que se traduzca en que hay identidad de partes entre la Comisión y el Síndico.

Por último, en cuanto a la aplicación de la representación adecuada de *Taylor*, supra, debía de ocurrir que los intereses de la Comisión y del Síndico estuvieran alineados y que este entendiera que representaba a la Comisión o que el Tribunal de Quiebras se encargara de proteger los intereses de la Comisión. Surge del expediente que el Tribunal de Quiebras se limitó a escuchar la postura de la Comisión en la vista de aprobación y era incuestionable que los intereses de la Comisión no estaban alineados con los del Síndico en el pleito adversativo ya que este expresamente reconocía que únicamente representaba los intereses del caudal de Holland en la estipulación. Obsérvese que al inicio de ambos pleitos, las alegaciones del Síndico y la Comisión tuvieron intereses paralelos, pero es insuficiente para establecer la mutualidad de intereses o *privity*.

El expediente reveló que en ese litigio no se demostró que los intereses de la Comisión fueron adecuadamente representados por el Síndico. Al procurar la aprobación de la estipulación, el Síndico expuso la deferencia sobre su gesta ante el caudal e inclinó la favorabilidad de la transacción con la oferta condicionada que suministró el

señor González Freyre. Asimismo, para defender la estipulación atacó y sugirió al Tribunal de Quiebras que no debía permitirse el reclamo de la Comisión que, en efecto, la objetó, pero luego la retiró.

Recalcamos que, precisamente, la Comisión objetó la estipulación porque no se consideró que como acreedora estaba adecuadamente representada por el Síndico. En esa etapa se denota claramente que los intereses entre estos se tornaron conflictivos. Evidentemente, además de la divergencia entre estos, el Síndico entendía que en el pleito adversativo actuaba en representación del caudal y no de la Comisión.

En atención a lo anterior, resolvemos que no se configuró la existencia de identidad de partes o *privity* por ningunas de las limitadas circunstancias reconocidas en *Taylor*, supra, para la aplicación del *nonparty preclusion*. Por lo tanto, ante la ausencia de *privity* entre el Síndico en el procedimiento adversativo y la Comisión con la presente causa de acción, no aplica la doctrina de *res judicata*.

Para la aplicación de la norma de cosa juzgada en casos como el presente, se requiere que los tribunales seamos puntillosos al momento de aplicar el estándar de revisión de la moción de desestimación. Todo lo señalado nos lleva a concluir que los foros *a quo* erraron, pues no procedía la desestimación de la causa de acción contra el señor González Freyre y, en consecuencia, contra el resto de los directores, oficiales y accionistas de Holland. De una evaluación de las alegaciones de la *Demanda* y los remedios principales y

alternativos solicitados resulta claro que, en esencia, la Comisión reclamó la responsabilidad solidaria a los oficiales y directores de Holland por los daños y perjuicios alegados que provocó la autorización de la redención de las acciones con relación al contrato y que, a su vez, culminaron en la insolvencia de la Corporación. A fin de cuentas, a estos no les cobija las protecciones que goza Holland, por lo que la Comisión podía ejercer su reclamo contra todos los recurridos conforme con la causa de acción que provee el Art. 5.22 de la Ley de Corporaciones, *supra*, por violentar los Arts. 5.14 y 8.04(b) del mismo ordenamiento jurídico corporativo.

Igualmente, arraigada al Art. 12.04 de la Ley de Corporaciones, *supra*, la Comisión reclamó a los directores de Holland la diferencia del pago de la *Sentencia* insatisfecha del pleito por desahucio, luego de la correspondiente distribución que ejecute el Síndico. Otro remedio que solicitó es que se declare a Inversiones Potosí y Trofima como adquirientes de mala fe en fraude de acreedores. A su vez, reclamó daños contractuales que provocó el incumplimiento del contrato de los directores y oficiales de Holland. Ciertamente, de un examen integral de la *Demanda* en cuestión emana que los intereses de la corporación no se afectan ni están en riesgo, por lo que el Síndico no tiene que comparecer en representación de Holland ni la empresa es parte indispensable.

IV

Por los fundamentos expuestos, se revoca la determinación de los foros *a quo* y se devuelve el caso al Tribunal de Primera Instancia para que atienda el litigio conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| La Comisión de los Puertos de Mayagüez<br><br>Peticionaria<br><br>v.<br><br>José González Freyre, su esposa Fulana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Frank Haacke, su esposa Sutana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Sarimila Méndez, su esposo Fulano de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Alberto Fernández González, su esposa Mengana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Eduardo Fernández González, su esposa Perenseja de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos; Trofima Corporation; Inversiones Potosí, Inc.<br><br>Recurridos | CC-2021-249 | Certiorari |
|---|---|---|

SENTENCIA

En San Juan, Puerto Rico a 15 de marzo de 2023.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revoca la determinación de los foros *a quo* y se devuelve el caso al Tribunal de Primera Instancia para que atienda el litigio conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo